**INDIANA PUBLIC INTEREST RESEARCH GROUP, a not-for-profit Indiana Corporation, and Mickey Gale Harrison, Plaintiffs-Appellants,**

v.

**CITY OF BLOOMINGTON, Tomilea Allison, in her official capacity as the Mayor of the City of Bloomington, Bloomington Common Council Members, in their official capacity, Monroe County Council and Monroe County Commissioners, in their official capacity, Defendants-Appellees.**

No. 1–1285 A 315.

Court of Appeals of Indiana,
First District.

Dec. 17, 1986.

Rehearing Denied Feb. 2, 1987.

Richard W. Cardwell, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, Claudia Carroll, Zinman & Carroll, Bloomington, for plaintiffs-appellants.

Charles F. Braddock, Braddock, Cherry, Godfrey & Clase, Anderson, for amicus curiae Indiana Municipal Lawyers Ass'n.

Carl Paul Lamb, Monroe County Atty., Bloomington, for defendants-appellees Monroe County Council and Monroe County Com'rs.

Geoffrey M. Grodner, The Law Offices of Geoffrey M. Grodner, P.C., Bloomington, for defendants-appellees City of Bloomington, Tomilea Allison and Bloomington Common Council Members.

RATLIFF, Judge.

### STATEMENT OF THE CASE

Indiana Public Interest Research Group appeals the trial court's grant of summary judgment in favor of the City of Bloomington, Tomilea Allison, in her official capacity as the Mayor of the City of Bloomington, the Bloomington Common Council Members, in their official capacity, the Monroe County Council, and the Monroe County Commissioners, in their official capacity. We affirm on the grounds that this suit amounts to an impermissible collateral at-

tack on proceedings in the United States District Court.

## FACTS

In 1981, the City of Bloomington, Indiana (the City), the Bloomington Utilities Service Board, and the State of Indiana filed suit in the United States District Court, Southern District of Indiana against Westinghouse Electric Corporation (Westinghouse) to remedy PCB contamination in Monroe County and the Bloomington area. Later, the city amended its complaint to name Monsanto Company as a defendant (Monsanto). In January of 1983, the United States of America filed a separate action against Westinghouse. Indiana intervened in this action as a plaintiff and Monsanto was joined by Westinghouse as a third-party defendant. These federal district court actions were consolidated.

Meanwhile, the City and Westinghouse had agreed to commence settlement negotiations as announced at a joint press conference. The U.S. and Indiana joined in the negotiations in December of 1983. The city was represented by two law firms in the federal court litigation and the negotiations. They were assisted by a private engineering consulting firm, hired as an independent contractor, and two staff members of the Bloomington Utilities Department.

In September of 1984, the Indiana Public Interest Research Group (InPIRG), a not-for-profit Indiana corporation, filed a motion to intervene in the lawsuit initiated by the U.S. However, neither InPIRG nor the federal district court took any further action with regard to this motion until June of 1985, when InPIRG filed a second motion to intervene in both the federal lawsuits initiated by the U.S. and the City. Ultimately, the federal court denied InPIRG's motion to intervene.

On December 3, 1984, copies of the 108 page proposed agreement resulting from negotiations between the parties involved in the federal suit were released to the public at a press conference. Soon thereafter, the U.S. Environmental Protection Agency (EPA) conducted a televised public meeting in Bloomington regarding the proposed Consent Decree. Technical experts and legal representatives of the EPA, Indiana State Board of Health, City, and Westinghouse made presentations and answered questions. Though not legally required, the City and County conducted a series of meetings over the next several months to review and evaluate the proposed Consent Decree and solicit public comment. Following local approval, the State conducted a public session of the Environmental Management Board before taking final action. In late April and early May of 1985, the federal government and Westinghouse approved the Consent Decree and the parties signed the agreement. On May 20, 1985, the parties' final agreement was publicly announced and filed with the U.S. District Court.

Prior to this, on April 17, 1985, InPIRG filed an action against Bloomington, Tomilea Allison, in her official capacity as mayor, Bloomington Common Council members, in their official capacity, the Monroe County Council, in their official capacity, and Monroe County. InPIRG based its complaint on alleged violations of the Open Door Law, Indiana Code section 5–14–1.5–1 *et seq.*, and the Access to Public Records law, Indiana Code section 5–14–3–1 *et seq.* On June 4, 1985, the County filed a motion to dismiss and on June 6, 1985, the City filed a motion to dismiss and a motion for summary judgment. On August 12, 1985, InPIRG filed a consolidated response and a motion for summary judgment.

The U.S. District Court, Southern District of Indiana, on August 22, 1985, approved the Consent Decree, noting the several public meetings held prior to acceptance by the parties. The court stated "... that the consent decree is fair, adequate, reasonable and appropriate ... and that there has been a valid consent thereto by each of the parties mentioned herein."

Six days later, the trial court entered an order on the City's and County's motions to dismiss and for summary judgment. The trial court made extensive findings of fact

and concluded that InPIRG is a citizen within the meaning of Indiana Code section 5–14–1.5–7(a) with standing to bring this action, and that the City had fully complied with InPIRG's request, pursuant to Ind. Code § 5–14–3–1– *et seq.*, to provide records. The trial court further concluded that the City's lawyers and consultants were not covered by the Open Door requirements but assuming *arguendo* they were a public body, any taint caused by their alleged secret meetings was subsequently cured by the Bloomington Common Council's final actions. The court also concluded the April 1, 1985, gathering of the Monroe County Council was not a meeting as defined by Ind.Code § 5–14–1.5–2(c) and thus not subject to the Open Door laws but that even assuming *arguendo* the gathering was a public meeting, any taint was subsequently cured and the Council was not required to give notice of the meeting. Thus, the trial court found there were no genuine issues of fact and granted summary judgment in the City's and County's favor. Thereafter, InPIRG perfected this appeal.

## ISSUE

InPIRG presents several issues for review. However, we find the following issue, which we raise *sua sponte*, dispositive of this appeal:

Whether InPIRG's suit in state court constitutes an impermissible collateral attack on the federal court's decision approving the consent decree.

## DISCUSSION

It is a basic rule that where a judgment or decree of a federal court determines a right under a federal statute, that decision is "final until reversed in an appellate court or modified or set aside in the court of its rendition." *Stoll v. Gottlieb* (1938), 305 U.S. 165, 170, 59 S.Ct. 134, 137, 83 L.Ed. 104, 108, quoting *Deposit Bank v. Frankfort* (1903), 191 U.S. 499, 520, 24 S.Ct. 154, 162, 48 L.Ed. 276, 284. In addition, as Professor Degnan has stated:

"A valid judgment rendered in any judicial system within the United States must be recognized by all other judicial systems within the United States, and the claims and issues precluded by that judgment, and the parties bound thereby, are determined by the law of the system which rendered the judgment."

Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741, 773 (1976). Thus, state courts have generally accepted the rule that they must give full faith and credit to the proceedings of federal courts. *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania* (3d Cir.1985), 755 F.2d 38, 43, *cert. denied*, — U.S. —, 106 S.Ct. 67, 88 L.Ed.2d 54; Degnan, at 744; *see also* 18 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 4468 (1981) ("It would be unthinkable to suggest that state courts should be free to disregard the judgments of federal courts...."). State courts are "destitute of all power" to interfere with the decisions .or proceedings of federal courts. *Delaware Valley*, at 45 (Stern, J. concurring) quoting *Central National Bank v. Stevens* (1898), 169 U.S. 432, 460–61, 18 S.Ct. 403, 413–14, 42 L.Ed. 807, 817.

It is, therefore, settled that a (federal) consent decree is not subject to collateral attack. *Thaggard v. City of Jackson* (5th Cir.1982), 687 F.2d 66, 68; *Dennison v. City of Los Angeles* (9th Cir.1981), 658 F.2d 694, 695; *Culbreath v. Dukakis* (1st Cir.1980), 630 F.2d 15, 22. To permit such an attack would lead to uncertainty for involved parties and render the concept of final judgments meaningless. *Thaggard*, at 69. Such an attack would also severely undercut important notions of judicial efficiency and unfairly prejudice other parties and nonparties. *Id.* Thus, in the instant case, it would be improper for this court to decide, in a collateral proceeding, whether the consent decree is valid.

In a factually similar case, *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania* (3d Cir.1985), 755 F.2d 38, the Commonwealth of Pennsylvania entered into a consent decree with the United

States and other parties whereby it agreed to implement a vehicle emission testing program. Various Pennsylvania state legislators petitioned to intervene in the federal action, arguing that their rights as legislators were being usurped by enforcement of the consent decree. The federal district court denied intervention. Thereafter, the legislators filed actions in the state court seeking a declaratory judgment that the Pennsylvania parties lacked authority to enter into the federal court consent decree. The Pennsylvania Supreme Court held that the state officials had no authority to enter into the federal consent decree, ruled that the federal decree was a nullity, and remanded the case to the trial court which enjoined the Pennsylvania Department of Transportation from complying with the federal decree. Pennsylvania then asked the district court to vacate the consent decree which the federal court refused to do. On appeal, the Third Circuit found the action to be an impermissible collateral attack on the federal consent decree; it was an attack in the state court system on a final federal court judgment involving federal law. *Delaware Valley*, at 42, 45. The Third Circuit based its decision on the full faith and credit clause, and reiterated the rule previously noted in *Stoll*. *Id.* at 44. In his concurrence, Judge Stern found the ultimate source for binding the state courts to federal decrees to be the Supremacy Clause. *Id.* at 46 (Stern, J., concurring). However, he agreed wholeheartedly with the majority's end result stating, "The state's order is untenable not only because the prior federal order was *res adjudicata,* which it was, but because a state has no power to disturb any federal decree." *Id.* at 45.

In *Burns v. Board of Commissioners* (7th Cir.1971), 437 F.2d 1143, a group of public school teachers instituted an injunction action in state court, seeking relief from a federal district court order relating to corrective teacher reassignments. The case was removed to federal court where Judge Dillin entered a judgment adverse to the teachers. On appeal the Seventh Circuit upheld the removal of the case to federal court. The teachers further complained they were being involuntarily reassigned pursuant to the district court's actions without any opportunity to defend their interests due to the fact that the district court had denied their petition for intervention in the action resulting in the teacher reassignment. The Seventh Circuit, noting that no appeal was taken from the denial of intervention, and that such action would have been the proper remedy to protect their interests, found that the teachers had waived any error and could not now collaterally attack either the denial of intervention or the final judgment rendered thereafter. *Burns*, at 1144. Clearly, actions in state courts that attempt to undermine federal court decisions amount to impermissible collateral attacks.

As these cases demonstrate, InPIRG's suit in the lower court and present appeal in this court amount to an impermissible collateral attack upon the federal court's decision. In the federal action upon which the present case is based, the federal court found the consent decree to be "... fair, adequate, reasonable and appropriate ..." and validly accepted by the parties. InPIRG's suit in state court challenges the validity of the procedures leading up to the consent decree; InPIRG argues that the parties violated the Open Door Law and the Access to Public Records Law. While these specific issues were not litigated in the federal court action, they were tacitly decided by the federal court's approval and adoption of the consent decree. An opinion from this court on these issues could potentially challenge the efficacy of the federal court's decision and leave the parties in the same difficult position as that which Pennsylvania faced in *Delaware Valley;* the parties could be faced with contradictory orders from state and federal courts. As the Third Circuit stated: "Only the federal courts have the power to determine the authority of federal court litigants, bringing suit under federal law, to enter into consent decrees approved by a federal court." *Delaware Valley,* at 44. Thus, we must defer to the judgment rendered by

the federal court in this matter and because this state court action constitutes an impermissible collateral attack upon that judgment, we affirm the decision of the trial court.

NEAL, J., and BUCHANAN, C.J., sitting by designation, concur.