The INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and Westinghouse Electric Corporation, Appellants–Respondents,

v.

Dale CONARD and Connie Conard, Appellees–Petitioners.

No. 36A01–9107–CV–223.

Court of Appeals of Indiana, First District.

April 14, 1992.

Opinion on Denial of Rehearing June 15, 1992.

David R. Berz, Peter M. Gillon, Steven L. Humphreys, Weil, Gotschal & Manges, Washington, D.C., Joseph B. Carney, James W. Clark, Baker & Daniels, Indianapolis, for appellants-respondents.

David S. McCrea, McCrea & McCrea, Bloomington, for appellees-petitioners.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Westinghouse Electric Corporation ("Westinghouse") appeals from a judgment reversing a final administrative order of the Water Pollution Control Board ("WPCB"). The judgment determined that a certain consent decree ("Decree") does not mandate a one part per billion ("ppb") limit for polychlorinated biphenyls ("PCBs") in certain treated waters, and that the Decree's provisions are not binding on a permitting process.[1] We affirm.

## ISSUE

We address one consolidated and restated issue on appeal:

Did the trial court properly hold that the Decree does not mandate the establishment of a one ppb maximum effluent limitation for PCBs in the National Pollutant Discharge Elimination System ("NPDES") permitting process?[2]

## FACTS

This dispute stems from a lawsuit filed in 1981 in the United States District Court for the Southern District of Indiana ("Court") by the City of Bloomington ("City") to require Westinghouse to remedy PCB contamination in the Bloomington area. Negotiations between the United States, the State of Indiana, the City, and Westinghouse commenced in 1983 and culminated in a proposed settlement in 1984. Throughout the negotiations, the community was briefed on the settlement discussions. Ultimately, the Decree was entered in August of 1985.

In May of 1984, the United States Department of Justice filed notice of the proposed Decree in the *Federal Register* and allowed the public an additional thirty-day period in which to comment on the Decree. This public comment period was subsequently extended at the request of several Bloomington area residents.

In December of 1984, nine months before the Decree was adopted, a draft decree was released to the public and extensive public hearings were held at which technical experts and the parties' legal representatives made presentations and answered questions. A series of meetings was held over the next several months to review and evaluate the proposed Decree and solicit public comment.

---

1. The Indiana Department of Environmental Management ("IDEM"), a respondent in the action below, is not participating in this appeal. The branch of IDEM involved in this action is the WPCB.

2. Westinghouse presents four issues for review. However, our resolution of Westinghouse's first issue, which we rephrase and adopt as the sole issue for review, makes resolution of the remaining issues unnecessary.

After considering the testimony of the parties and their experts, the Court accepted the Decree and ruled that it was "fair, adequate, reasonable and appropriate," and that each of the parties thereto had validly consented to it. Record at 62. The Decree was duly entered by the Court on August 22, 1985. During the public review process prior to entering the Decree, IDEM and the Environmental Protection Agency ("EPA") determined that the one ppb PCB limitation set forth in the Decree adequately protected public health and was consistent with state and federal standards. Record at 121. An official from IDEM also articulated the source of the one ppb PCB limitation at a public hearing on December 9, 1987:

> "By way of explanation of the 1 ppb limit, which is a daily maximum limit from the outfall 001 for total PCB's, this limitation as proposed is derived from the Consent Decree."

Record at 495. At the time it entered the Decree, the Court also denied the motion of Dale Conard and Connie Conard ("Conards")[3] to intervene in the lawsuit,[4] finding that their interests were adequately represented by the existing parties, and that they had ample opportunity to comment regarding the Decree. Record at 58.

The Decree contains several sections which are pertinent to this appeal. Paragraph 59(a) requires Westinghouse to construct a system to capture and treat natural spring water which is contaminated with PCBs.[5] Record at 38–39. It also requires that PCB concentrations be limited to a maximum of one ppb. Record at 39–42. This paragraph further details the procedures to be used in treating the PCB contaminated water. See Record at 39–46.

On June 7, 1988, IDEM issued Westinghouse an NPDES permit ("Permit") for the discharge of treated water from a spring water treatment facility near Bloomington. Record at 173–75. The Permit required Westinghouse to treat the spring water processed through the facility to a level of one ppb of PCBs. Record at 176, 192. The Permit was reviewed and approved by the EPA, as required by the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (1987 and Supp. 1991). *Id.* at 173–74.

The Conards filed objections to the one ppb PCB limitation contained in the Permit. An administrative law judge ("ALJ") heard the Conards's challenge on January 9, 1989. Prior to the hearing, the parties had agreed that the binding effect of the Decree was a threshold legal issue to be resolved before the ALJ heard expert opinion on the PCB limitation set in the Decree. On February 17, 1989, the ALJ concluded that as a matter of law, the Decree mandated an absolute discharge limitation of one ppb for PCBs. The ALJ further held that the Conards's challenge to the discharge limitation constituted "an impermissible collateral attack" on the Decree. Record at 581.

The Conards objected to the ALJ's decision. On May 16, 1989, after a hearing and review of the record, the WPCB rejected the Conards's objections and adopted the ALJ's findings, conclusions, and order. Record at 577–78. The Conards then sought judicial review of the WPCB's decision, contending that IDEM was not bound

3. Portions of the record seem to mistakenly name the petitioners as Dale and Connie "Conner" rather than Dale and Connie Conard. However, the context of the use of "Conner" suggests a mere misspelling. Thus, we treat those references to the "Conners" as actually referring to the Conards. Neither party has disputed that the "Conners" are indeed the Conards.

4. The Conards own a farm that has a spring-fed stream called "Conards Branch," which has been designated in the Decree for clean-up and monitoring of PCBs.

5. Westinghouse also refers to Paragraphs 2, 100, 111, and 137 in its appellant's brief. Appellant's Brief at 9, 15, 19–20. However, the record contains only excerpts from the Decree, and these paragraphs are not included in these excerpts. Thus, we may not consider them, notwithstanding Westinghouse's inclusion of the entire Decree in its appendix. See Ind. Appellate Rule 8.3(A)(5) (statement of facts must include appropriate references to the record); *International Fidelity Insurance Co. v. State* (1991), Ind. App., 567 N.E.2d 1161, 1164 (improper to discuss in brief facts which are not included in record); *see also Turner v. State* (1987), Ind., 508 N.E.2d 541, 543 (material included in appendix but not properly made part of record of proceedings pursuant to App.R. 7.2 is outside record of cause and may not be considered).

by the Decree and that the WPCB's decision was arbitrary, capricious, and contrary to law. The parties filed cross motions for summary judgment regarding whether the Decree was binding on the Permit's PCB limitation.

On April 2, 1991, the trial court reversed the WPCB's ruling, granting the Conards's motion for summary judgment, and denying the motions of Westinghouse and IDEM for summary judgment. Record at 1950. The trial court held that IDEM was estopped from asserting that the NPDES permitting process is bound by the Decree;[6] that the NPDES permitting process was not bound by the Decree; that the NPDES permitting process requires a public hearing before a permit can issue; and, that the Permit was not bound by the terms, conditions, and limitations of the Decree. Record at 1949.

Westinghouse appeals. Other relevant facts will be stated in our discussion.

DISCUSSION AND DECISION [7]

Westinghouse argues that the trial court erred in finding that the NPDES permitting process is not bound by the PCB limitation set in the Decree. We disagree with Westinghouse's interpretation of the Decree's preclusive effect.

■ Judicial review of an administrative decision is limited to whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory, or legal principle. *State Board of Tax Commissioners v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920, 921. Westinghouse's main argument is that the trial court's judgment violates principles of finality of judgments and ignores the Decree's preclusive effect on further proceedings involv-

ing the PCB effluent limitation. Because we hold that IDEM is not bound by the Decree to adopt a maximum effluent limitation for PCBs of one ppb and that further proceedings in Indiana are required before issuing the Permit, we need not address Westinghouse's additional issues presented regarding the Conards's standing to bring suit in launching an alleged collateral attack on the Decree.

■ In essence, Westinghouse's argument presents a question of the preclusive effect of the Decree on further NPDES permitting procedures relating to the affected area. The doctrine of claim preclusion applies where a final judgment on the merits has been entered which acts as a complete bar to a subsequent action on the same claim between the same parties or those in privity with them. *In re Marriage of Moser* (1984), Ind.App., 469 N.E.2d 762, 765. In contrast, issue preclusion applies when a particular issue, which was adjudicated in the prior action, is raised in a subsequent suit on a different cause of action. *Id.* at 765–66. When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively settled by the judgment in the prior action. *Id.* at 766. However, where issue preclusion applies, the previous judgment is conclusive only regarding those matters actually litigated and determined therein. *Id.*

■ A logical first step would be to determine whether claim preclusion or issue preclusion applies to the Conards's claim. It is undisputed that consent decrees are treated as final judgments on the merits and accorded full *res judicata* effect. *Indiana Public Interest Research Group v. City of Bloomington (InPIRG)* (1986), Ind.App., 501 N.E.2d 476, 478–79. However, we find that whether Westinghouse's argument is read as one sounding in claim preclusion or issue preclusion, it fails to demonstrate error. Both types of preclu-

---

**6.** Because IDEM is not participating in this appeal, we need not decide whether estoppel operates in this circumstance. We limit our holding to the narrow issue presented.

**7.** We note that much of the Conards's brief's argument section barely approaches the cogent argument required by Ind. Appellate Rule

8.3(A)(7). Many portions of the argument contain no citations to pertinent statutory and other authorities, and amount to bare assertions. However, we are able to decide the appeal on its merits notwithstanding such marginal compliance.

sion require an identity of, at the very least, issues in the previous action and the one presently pending. *See Moser*, 469 N.E.2d at 765–66. Even if Westinghouse could show that the remaining elements for either claim preclusion or issue preclusion were present, we find that it has failed to show the identity of issues required.[8] We need only compare Paragraph 59 of the Decree, discussing the effluent PCB limitation, to the ALJ's findings and the trial court's conclusions, to see that rather than controverting the Decree, IDEM is acting within the Decree's allowable parameters for setting PCB limitations. Thus, the Conards's claim is not a collateral attack on the Decree. *See Cromer v. Sefton* (1984), Ind.App., 471 N.E.2d 700, 706–07 (*res judicata* may not apply where issues are not identical); *Moser*, 469 N.E.2d at 766.

Paragraph 59 of the Decree establishes an upper limitation for PCB discharge of one ppb. Record at 39–40. We do not agree with the ALJ that this effluent limitation is an absolute number which IDEM must adopt in issuing NPDES permits under the Clean Water Act. *See* Clean Water Act, 33 U.S.C. § 1251, *et seq.* However, the ALJ's findings are correct in stating that the Decree mandates a maximum allowable effluent limitation of one ppb of PCBs. *See* Record at 581. The fact that this amount is a maximum, or upper limit, however, means that IDEM is free to set PCB limits within Indiana whose maximum is below one ppb. The Decree clearly states that its provisions are subject to other approvals by applicable agencies and local authorities. *See* Record at 1949. Because the Decree only sets the upper limit for PCB discharge, IDEM may, after a proper hearing and upon proper evidence, adopt more stringent standards; however, IDEM may not arbitrarily reject the maximum limitation set in the Decree. Thus, as long as the maximum PCB standard IDEM eventually adopts does not exceed the one ppb mandated by the Decree, IDEM is free to set a PCB effluent limitation in accordance with its own procedures and statutory goals for protecting aquifers and aquatic life. Moreover, such a construction com-

ports with the national goals of the Clean Water Act. *See* Clean Water Act, 33 U.S.C. § 1251(a) (objectives of Act include restoring and maintaining chemical, physical, and biological integrity of nation's waters; achieving interim goals which will provide for protection and propagation of fish, shellfish, and wildlife, and provide for recreation in and on water; and, prohibiting discharge of toxic pollutants in toxic amounts).

Additionally, Westinghouse's reliance on *InPIRG*, 501 N.E.2d 476, is misplaced. *InPIRG* similarly involved the Decree and its preclusive effect on state court proceedings. However, *InPIRG*'s facts and procedural context make it inapposite to the case at bar. In *InPIRG*, the plaintiffs challenged the validity of the procedures leading up to the acceptance of the Decree. *Id.* at 479. This court held that such a challenge was an impermissible collateral attack on a federally approved consent decree. *Id.* We reasoned that to allow such a suit would challenge the efficacy of the federal court's decision and leave the parties facing contradictory orders from state and federal courts. *Id.*

In contrast, the Conards's challenge to the Decree's PCB limitation in this case does not carry the danger of infringing on federal decisions. As discussed above, the Conards's suit does not challenge the Decree's absolute maximum PCB limitation, but urges that IDEM adopt a lower maximum effluent limitation in Indiana. Because we have determined that the one ppb limit stated in the Decree is only an upper limit for PCB discharges, a maximum limit below one ppb, adopted by IDEM after the proper public hearings and procedures, would not undermine the efficacy of the federal court's decision in approving the Decree. Thus, the parties are not left facing conflicting orders from federal and state courts with which they cannot comply. We find that the Conards's suit is not

---

8. Because we find that Westinghouse has failed to show the identity of issues required to use the Decree to preclude the Conards's claim, we need

not address Westinghouse's claim that the Conards's interests were already adequately represented in the Decree by the EPA.

a collateral attack on the federally approved Decree. *See id.* at 478.[9]

In sum, IDEM is not bound by the Decree in the way that the ALJ interpreted it. Holding a hearing on this issue is not a collateral attack on the Decree because IDEM is not seeking to avoid the Decree's mandates, but is acting within the Decree's allowable parameters. *See* Record at 34–46; 1945–50. As the trial court correctly found, IDEM, while bound by an upper PCB effluent limitation of one ppb, is not bound to adopt an absolute maximum limitation of one ppb. IDEM must still hold hearings to seek public response to its proposed PCB limitation in accordance with applicable state and local laws, regulations, and permits, and may still ultimately approve an effluent limitation of one ppb; however, an absolute upper limit of one ppb is not mandated by the Decree. To the extent that the WPCB so interpreted the Decree's requirements, it was in error. The trial court's judgment is not contrary to law.

We therefore affirm the trial court's judgment regarding Westinghouse in its entirety. Further proceedings are ordered in accordance with the trial court's order of April 2, 1991.

Affirmed.

RATLIFF, C.J.

### OPINION ON REHEARING

Westinghouse asserts numerous errors in our decision, *Indiana Department of Environmental Management v. Conard* (1992), Ind.App., 589 N.E.2d 1195. We agree that footnote five (5) should not contain references to Paragraphs 2, 100, and 137, as these portions of the Decree are contained in the Record. *See* Record at 1688, 1949, and 1702. We therefore delete the references to these paragraphs contained in footnote five (5). This misstate-

**9.** Westinghouse also cites several other cases involving challenges to the Decree; however, these cases are distinguishable from this case because they involved different procedural contexts. *See Schalk v. Reilly* (7th Cir.1990), 900 F.2d 1091, *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (citizens' suit challenging Decree dismissed because of lack of subject matter jurisdiction because federal court could not consider challenges to remedial actions under Comprehensive Environmental Response, Com-

ment is in no way material to our resolution of the issues addressed in our opinion, and we thus deny rehearing in all other respects. The revised footnote should read:

**5.** Westinghouse also refers to Paragraph 111 in its appellant's brief. Appellant's Brief at 19–20. However, the record contains only excerpts from the Decree, and this paragraph is not included in these excerpts. Thus, we may not consider it, notwithstanding Westinghouse's inclusion of the entire Decree in its appendix. *See* Ind.Appellate Rule 8.3(A)(5) (statement of facts must include appropriate references to the record); *International Fidelity Insurance Co. v. State* (1991), Ind.App., 567 N.E.2d 1161, 1164 (improper to discuss in brief facts which are not included in record); *see also Turner v. State* (1987), Ind., 508 N.E.2d 541, 543 (material included in appendix but not properly made part of record of proceedings pursuant to Ind.Appellate Rule 7.2 is outside record of cause and may not be considered).

Rehearing denied.

CONOVER and SHARPNACK, JJ., concur.

pensation, and Liability Act (CERCLA), where actions had not been completed; and, federal court could not consider EPA's failure to perform environmental impact study under National Environmental Policy Act (NEPA)); *City of Bloomington v. Westinghouse Electric Corp.* (7th Cir.1987), 824 F.2d 531 (intervenors not allowed to join in suit where intervention would prevent implementation of provisions in Decree and alter Decree's mandates).