INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and Westinghouse Electric Corporation, Appellants (Respondents Below),

v.

Dale CONARD and Connie Conard, Appellees (Petitioners Below).

No. 36S01–9305–CV–560.

Supreme Court of Indiana.

May 24, 1993.

David R. Berz, Peter M. Gillon, Steven L. Humphreys, Washington, DC, Joseph B. Carney, James W. Clark, Indianapolis, for appellants.

David S. McCrea, Bloomington, for appellees.

ON CIVIL PETITION TO TRANSFER

SHEPARD, Chief Justice.

The trial court in this case directed Indiana's environmental agency to set aside an effluent permit it has issued pursuant to a federal consent decree that resolved a dispute in Bloomington about discharge of PCBs. We reverse.

The Indiana Department of Environmental Management ("IDEM") granted a National Pollutant Discharge Elimination System ("NPDES") permit to Westinghouse Electric Corporation ("Westinghouse") after public comment and hearings. In general terms, the permit authorizes Westinghouse to discharge water from a facility which treats spring water emanating from a contaminated area known as "Neal's Landfill" in Monroe County so long as the level of polychlorinated biphenyls ("PCBs") in the system effluent does not exceed 1 part per billion ("ppb").

Westinghouse had sought the permit to operate the water treatment facility as required by the terms of a 1985 Consent Decree proposed by the United States, the State of Indiana, Monroe County, the city of Bloomington, and Westinghouse, and approved by the U.S. District Court for the Southern District of Indiana in *City of Bloomington v. Westinghouse Elec. Corp.*, Civil Action No. IP 81–448–C, *consolidated with United States v. Westinghouse Elec. Corp.*, Civil Action No. IP 83–9–C (S.D.Ind. 1985). The decree was the product of lengthy settlement negotiations and public hearings and comment at the local, state and federal levels. After the parties approved the Consent Decree and after hearing testimony from the parties and their experts, U.S. District Judge S. Hugh Dillin entered the decree, concluding it was "fair, adequate, reasonable and appropriate ... and that there has been a valid consent thereto by each of the parties mentioned therein." (Record at 62). Judge Dillin simultaneously denied a motion by Dale and Connie Conard to intervene in the suit giving rise to the decree.

As required by the decree, Westinghouse submitted to IDEM an NPDES permit application for the Neal's Landfill water treatment facility. IDEM issued a draft permit, on which public hearings were held and public comment was received. The hearings were designed to obtain public comment on various parameters of the permit such as pH (acidity) levels, total dissolved solids, and sampling requirements, matters which were not specified in the decree.

IDEM thereafter issued Westinghouse an NPDES permit, which included the 1 ppb PCB limit contained in the Consent Decree. The Conards filed objections to issuance of the permit, which objections were heard before an administrative law judge of Indiana's Water Pollution Control Board. The ALJ determined that the Conards' challenge turned solely on whether the IDEM is bound by the Consent Decree's 1 ppb maximum limit on PCBs, or whether its permitting process may establish a more stringent limit. In his Recommended Findings of Fact, Conclusions of Law and Order, the ALJ concluded that the IDEM permitting process was bound by the 1 ppb limitation established in the Consent Decree, and that the Conards' challenge was an impermissible collateral attack on the decree. After a hearing, the Water Pollution Control Board adopted the ALJ's recommended findings and order. The Conards then filed in the Monroe Circuit Court for judicial review of the board's decision.

The trial court reversed the board and granted summary judgment for the Conards. The court held that IDEM is estopped from claiming that the Consent Decree's 1 ppb PCB limit is binding. The court also held that the permitting process is not bound by the terms and limits of the Consent Decree. It ordered IDEM to reopen the NPDES permitting process and reconvene a hearing in Bloomington to explain to the public that the permit is not bound by the Consent Decree, and to solicit additional public comment about the permit. It directed IDEM to rewrite the permit to incorporate the substantive com-

ments and information provided at the hearings. It allowed the operations at Neal's Landfill to go forward, with modifications as necessary if more stringent limitations are dictated by the additional hearing. The Court of Appeals affirmed. *Indiana Dep't. of Envlt. Management v. Conard* (1992), Ind.App., 589 N.E.2d 1195, *modified,* 589 N.E.2d at 1200. We grant transfer.

### Issues

Westinghouse raised four issues in its appeal from the decision of the trial court:

(1) whether the trial court erred in holding that the Consent Decree does not mandate use of an effluent limit of 1 ppb of PCBs in the NPDES permitting process;

(2) whether the trial court erred in ruling that governmental and private parties to a consent decree may be estopped from arguing that its terms are binding on the basis of extrinsic statements made by governmental officials;

(3) whether the trial court erred in permitting a private party to attack the Consent Decree collaterally; and

(4) whether a private party's challenge to the terms of the Consent Decree is precluded by res judicata.

### Standard of Review

As Westinghouse challenges a trial court's reversal of the decision of an administrative agency, we examine at the outset the proper standard for reviewing the agency's decision. We analyze the decision of the trial court in light of our command that trial courts "carefully police the scope of their review so that they do not intrude into the area of valid administrative discretion." *Uhlir v. Ritz* (1970), 255 Ind. 342, 344, 264 N.E.2d 312, 313.

■ Under the Administrative Adjudication Act, Ind.Code Ann. § 4–21.5 *et seq.* (West 1991), the scope of a court's judicial review is limited to consideration of (1) whether there is substantial evidence to support the agency's finding and order and (2) whether the action constitutes an abuse of discretion, is arbitrary, capricious, or in

excess of statutory authority as revealed by the uncontradicted facts. *Department of Fin. Insts. v. State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248. In reviewing an administrative decision, a court cannot try the facts de novo or substitute its own judgment for that of the agency. Ind.Code Ann. § 4-21.5–5–11 (West 1991). The party challenging the administrative order bears the burden of showing that there are no substantial facts to support the agency's finding or that the action was arbitrary and capricious and outside the jurisdiction or authority of the agency. *Department of Fin. Insts.,* 253 Ind. at 176, 252 N.E.2d at 251.

■ The trial court in this case did not accord the decision of the Water Pollution Control Board the deference required under the Administrative Adjudication Act and our caselaw. In its order, the court stated that the Conards' challenge to the binding effect of the decree presented an "issue ... *de novo* to this Court." (Record at 1945) (Emphasis added). Furthermore, the court did not find the board's order unsupported by substantial evidence or arbitrary and capricious or outside the board's jurisdiction or authority. Instead, the court weighed the facts and evidence de novo to conclude that the IDEM permitting process is not bound by the 1 ppb PCB limit of the Consent Decree and that the State is estopped from asserting otherwise.

As an initial matter, we find the trial court's failure to apply the proper standard of review of the board's decision was error. Next, we turn to the substantive issues raised by Westinghouse.

### Is the Consent Decree's PCB Limitation Binding?

The sole issue determined by the ALJ and the Water Pollution Control Board in denying the Conards' objections to the NPDES permit was whether IDEM is bound by the Consent Decree's 1 ppb maximum limit on PCBs. At that stage, the Conards did not contest the fact that the Consent Decree imposes upon Westinghouse a duty to construct a water treatment facility which would reduce the PCB

content in the water to a maximum of 1 ppb.[1] Instead, they argued that IDEM permitting process was not bound by the decree's 1 ppb maximum PCB limit.

■ The State of Indiana and IDEM became bound by the terms of the Consent Decree when their representatives signed it. The decree was signed for the State of Indiana by Attorney General Linley Pearson and Deputy Attorney General Michael Schaefer, and by the Environmental Management Board (now IDEM) by its technical secretary, Ralph C. Pickard. Paragraph 2 of the decree specifically states: "This Consent Decree shall bind ... all parties hereto and their respective successors and assigns, whether elected or appointed." *See also Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 678 F.2d 470 (3d Cir.) (Pennsylvania bound by consent decree which by its terms applies to state and was signed by state attorney general and counsel for Departments of Transportation and Environmental Resources), *cert. denied,* 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982).

■ In signing the Consent Decree, the parties to the decree agreed to impose upon Westinghouse the duty of constructing a water treatment facility which would reduce the concentration of PCBs in the water to a maximum of 1 ppb. As consent judgments are contractual in nature and to be construed as written contracts, *cf. United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d

256 (1971), we look only to the terms of the decree, which unambiguously establish Westinghouse's duties concerning its treatment facility. Because Westinghouse waived its right to litigate the issues implicated in the Monroe County clean-up project, the conditions upon which it gave that waiver must be respected. *See id.*

The trial court erred when it ventured beyond the four corners of the Consent Decree and interpreted the binding effect of the 1 ppb limit based on the extrinsic statements of EPA officials made before entry of the decree. Resort to extrinsic evidence is unnecessary, as Paragraph 59(a) of the Consent Decree unambiguously imposes upon Westinghouse duties in regard to the water treatment facility which are eliminated when the PCB concentration in the influent to the system drops below 1 ppb.

### Is IDEM Estopped from Claiming the Decree is Binding?

■ Westinghouse also correctly contends that the trial court erred in finding for the Conards on grounds of estoppel. The court held that IDEM is estopped from asserting that the Consent Decree binds the NPDES permitting process by virtue of statements made by Larry Kane, a representative of the permits section of the Office of Water Management, at the public hearing held on the permit. The court cited the following statements by Kane:

> My presentation tonight is intended to give a brief explanation of the NPDES

---

1. Paragraph 59(a) of the Consent Decree requires Westinghouse to construct an activated carbon filtration system to capture and treat natural spring water emanating from identified springs near Neal's Landfill. (Record at 38–42). Paragraph 59(a)(1)(C)(ii)(a) permits Westinghouse to operate a "Lamella"-type sediment collection system in lieu of a carbon filter system if test results demonstrate that the effluent from the system contains PCB concentrations of less than 1 ppb.

(Record at 39). Moreover, if test results from four consecutive samples demonstrate that the influent to the treatment system contains PCB concentrations of less than 1 ppb, paragraph 59(a)(1)(E) allows Westinghouse to shut down the system during the period of time the PCB concentration of the influent remains at or below 1 ppb. (Record at 40). Similarly, the mon-

itoring and treatment for PCBs required by paragraph 59(a) may be permanently terminated after closure of the site if the influent to the system contains PCB concentrations of less than 1 ppb. (Record at 41) (Paragraph 59(a)(1)(H)).

Paragraph 59(a)(1)(B) requires Westinghouse to submit approvable applications for construction and NPDES permits for the treatment facility. (Record at 39). Paragraph 100 of the decree states that "[a]ll activities undertaken by Westinghouse pursuant to this Consent Decree shall be undertaken in accordance with the requirements of all applicable local, state and federal laws, regulations and permits." (Record at 1949).

Westinghouse constructed the water treatment system as required, and the system has been in operation since February, 1990. (Record at 1957).

Permit which is *proposed* by our agency for issuance to Westinghouse Electric Corporation for the *proposed* treatment system being constructed and operated at the Neal's Landfill site. [Record at 491] [Emphasis added].

. . . .

The effluent limitations and the monitoring requirements *proposed* in this permit for outfall 001, from any treatment system outfall, are as follows: . . . . [Record at 495] [Emphasis added].

By way of explanation of the 1 ppb limit, which is a daily maximum limit from the outfall 001 for total PCB's, this limitation as *proposed* is derived from the consent decree. [Record at 495–96] [Emphasis added].

The trial court concluded that the plain meaning of the word "proposed" is that the 1 ppb PCB level in the Consent Decree is not binding on the NPDES permitting process. (Record at 1497).

 As a general rule, equitable estoppel will not be applied against governmental authorities. *City of Crown Point v. Lake County* (1987), Ind., 510 N.E.2d 684. The state will not be estopped in the absence of clear evidence that its agents made representations upon which the party asserting estoppel relied. *West Pub. v. Indiana Dept. of Revenue* (1988), Ind.Tax, 524 N.E.2d 1329. The party claiming estoppel has the burden to establish all facts necessary to constitute it. *Phar–Crest Land Corp. v. Therber* (1969), 251 Ind. 674, 244 N.E.2d 644. To make out a claim of estoppel, one must show: (1) a representation or concealment of material fact; (2) made by a person with knowledge of the fact and with the intention that the other party should act upon it; (3) to a party ignorant of the matter; and (4) which induced the other party to act upon it to his detriment. *Magnant v. Ambulatory Renal Servs.* (1991), Ind.App., 575 N.E.2d 1029, 1033.

We need not decide whether the equities of this case warrant application of the estoppel doctrine, because the Conards have not made out the minimum elements of the claim. The Conards do not demonstrate

any detrimental reliance on Kane's statements. Although they suggest that the public relied upon such representations at the hearing to argue for more stringent PCB requirements for the water treatment facility and that the IDEM improperly failed to consider public comment on the draft permit, the Conards point to no *detriment* incurred by the public as a result of Kane's statements.

Furthermore, we are not persuaded that Kane's use of the word "proposed" in references to the permit is a "representation of fact" that is contrary to the State's current position concerning the binding effect of the Consent Decree, or that Kane sought to induce reliance by using the word "proposed." As required by federal and state law, IDEM held public hearings and solicited public comment on the draft permit. Certain details of the permit were not finalized by the Consent Decree (e.g., monitoring requirements, and levels of constituents in the water other than PCBs), and public input on such details was forthcoming.

### May the Decree be Collaterally Attacked?

 Westinghouse further argues for reversal on the ground that the trial court judgment is an impermissible collateral attack on the federal Consent Decree. It argues that the validity of the decree, or the obligation of a signatory to comply with the decree, may not be challenged in this collateral state court proceeding.

In contrast, the Conards say they merely seek to enforce the decree and protect the right of citizens to provide input on issues involving the NPDES permit. They claim it is "unconscionable for Westinghouse to even suggest that [the Conards] have asserted an impermissible collateral attack on the federal court judgment entering the Consent Decree." Brief of Appellees at 7–8. According to the Conards, the public hearing requirement for the permit shows that "Congress recognized that there is something inherently unfair about third parties, i.e., the parties to the Consent De-

cree, foreclosing comments" by the Conards. *Id.* at 8.

Notwithstanding the Conards' vehement arguments to the contrary, Westinghouse's collateral attack argument is not only conscionable, but a correct statement of the law. The Conards' challenge to the binding effect of the Consent Decree on the NPDES permitting process is indeed an impermissible collateral attack. The district court entering the Consent Decree explicitly retained jurisdiction over enforcement and interpretation issues arising under the decree. (Paragraph 137). The Conards' state court challenge is therefore an inappropriate attempt to enforce the decree.

A collateral attack on a judgment is an attack made in a proceeding that has an independent purpose other than to impeach or overturn the judgment, although impeaching or overturning the judgment may be necessary to the success of the action. 46 Am.Jur.2d *Judgments* § 631 (1969); *see also State ex rel. Lacy v. Marion Probate Court* (1962), 243 Ind. 30, 35–36, 182 N.E.2d 416, 418 (defined as attack on judgment outside legally prescribed procedure for judicial review, which attempts to deny its validity, and may necessitate relief from judgment).

The Conards' challenge to the binding effect of the PCB limitations set by the Consent Decree is a collateral attack on the decree because its substance inescapably implicates the decree and because validation of their claim would adversely affect implementation of the decree. *See Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 755 F.2d 38, 42 (3d Cir.1985) (state court holding that state was not bound by its representatives' signatures on federal consent decree held a collateral attack on prior federal case resolving the issue); *see also Striff v. Mason,* 849 F.2d 240, 245 (6th Cir.1988) ("Where an action appears to involve issues unrelated to a consent decree, but examination of the substance of the claim reveals that a consent decree is implicated and its implementation would be adversely affected, the action is properly considered a collateral attack on the decree.").[2]

To allow a collateral attack contesting the terms of the consent decree in this case "would raise the specter of inconsistent or contradictory proceedings, would promote continued uncertainty thus undermining the concept of a final judgment and would violate the policy of promoting settlement" of actions alleging violations of federal law. *See Marino v. Ortiz,* 806 F.2d 1144, 1146 (2d Cir.1986), *aff'd by an equally divided court,* 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988). Permitting a collateral attack by the Conards would subject Westinghouse to the real possibility of inconsistent obligations in regard to acceptable PCB levels, and would defeat the purpose of the lengthy negotiations and intricately detailed settlement between the parties to the decree.

The Conards pursued the proper course of action for challenging the effect of the Consent Decree when they moved to intervene in the lawsuit from which the decree issued. Judge Dillin denied their motion, finding it to be untimely.

---

**2.** *Striff* represents a line of cases from the federal circuits which have relied on the collateral attack doctrine to reject indirect challenges to the terms of civil rights consent decrees. In *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), however, the U.S. Supreme Court cast doubt upon the validity of that line of cases. In *Martin,* a group of white firefighters alleged that a city and county board committed reverse discrimination in promotion decisions as required by certain consent decrees. The Court rejected the defendants' contention that the firefighters' suit was an impermissible collateral attack, concluding that:

> No one can seriously contend that an employer might successfully defend against a Title VII claim by one group of employees on the ground that its actions were required by an earlier decree entered in a suit brought against it by another, if the later group did not have adequate notice or knowledge of the earlier suit.

*Id.* at 767, 109 S.Ct. at 2187.

In this case, the Conards did have adequate notice and knowledge of the environmental litigation which resulted in the Consent Decree. *See infra.* Moreover, we are not certain that the Supreme Court's reasons for rejecting a collateral attack defense in the context of a civil rights consent decree would apply in the context of an environmental consent decree.

*United States v. Westinghouse Electric Corp.*, Civil Action No. IP 83–9–C (S.D.Ind. 1985). The district court found that: (1) the Conards knew or should have known of their interests in the case at an earlier time and failed to act to protect such interests; (2) allowing intervention after such delay would prejudice the existing parties to the decree; and (3) the Conards' interests were adequately represented by the governmental parties. (Record at 54–57).

Collateral estoppel bars relitigation of a fact or issue where that fact or issue was necessarily adjudicated in an earlier suit and that fact or issue is presented in the subsequent lawsuit. *Sullivan v. American Casualty Co.* (1992), Ind., 605 N.E.2d 134. Because the Conards previously litigated the issue of whether their interests were adequately represented by the existing parties to the Consent Decree, they are collaterally estopped to contend that their interests were not represented. The Conards, like all members of the public, were given reasonable notice and opportunity to submit objections to the Consent Decree before it was entered.

### Is the Decree Res Judicata?

 The res judicata effect of the Consent Decree also bars the current attack on the NPDES permit's PCB limitation, because the issues currently raised were directly at issue and determined by the Consent Decree, and because the Conards' interests were represented by existing parties to the decree. The doctrine of res judicata bars a later suit when an earlier suit resulted in a final judgment on the merits, was based on proper jurisdiction, and involved the same cause of action and the same parties or privies as the later suit. *E.g., United States Envtl. Protection Agency v. City of Green Forest*, 921 F.2d 1394, 1403 (8th Cir.1990), *cert. denied,* — U.S. ——, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991).

Under federal law, which governs the res judicata effect of a federal judgment, consent decrees generally are treated as final judgments on the merits and accorded res judicata effect. *E.g., I.A.M. Nat'l Pension Fund v. Industrial Gear Mfg.*, 723 F.2d 944, 947 (D.C.Cir.1983). Such treatment promotes judicial economy, preserves certainty and respect for court judgments, and protects parties relying on prior litigation from vexatious relitigation. *Id.*

Although the Conards and other concerned citizens were not actually parties to the Consent Decree, federal courts have held that judgments will bind such persons when their relationship with a party in the original suit is "sufficiently close." *Southwest Airlines Co. v. Texas Int'l Airlines*, 546 F.2d 84, 94–95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977). In particular, citizens will be barred by res judicata from challenging consent decrees entered into by governmental authorities in *parens patriae* suits because the authorities are deemed to represent all their citizens. *Green Forest*, 921 F.2d at 1404 (EPA action to enforce Clean Water Act is a *parens patriae* action). Once a governmental authority represents all of its citizens in a *parens patriae* suit, a consent decree or final judgment resolving the suit " 'is conclusive upon those citizens and is binding upon their rights.' " *Id.* (quoting *United States v. Olin Corp.*, 606 F.Supp. 1301, 1304 (N.D.Ala.1985)).

Because the governmental parties to the Consent Decree, including the EPA, State of Indiana, Environmental Management Board, Monroe County Board of Commissioners, Monroe County Council, and Mayor of Bloomington, represented the local citizens in the litigation, the Consent Decree is binding on the Conards. Res judicata bars the Conards from now attacking the PCB level established by the decree.

We grant Westinghouse's petition for transfer, reverse the decision of the trial court, and reinstate the decision of the Water Pollution Control Board.

DeBRULER, DICKSON, and KRAHULIK, JJ., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. Because the Court of Appeals opinion is published at 589 N.E.2d 1195, I feel it is unnecessary to go into detail. I would point out, however, the conclusion reached by the Court of Appeals follows what I consider to be a well-reasoned approach to the case.

At page 1200, the Court of Appeals states:

"In sum, IDEM [Indiana Department of Environmental Management] is not bound by the Decree in the way that the ALJ [Administrative Law Judge] interpreted it. Holding a hearing on this issue is not a collateral attack on the Decree because IDEM is not seeking to avoid the Decree's mandates, but is acting within the Decree's allowable parameters. *See* Record at 34–46; 1945–50. As the trial court correctly found, IDEM, while bound by an upper PCB effluent limitation of one ppb, is not bound to adopt an absolute maximum limitation of one ppb."

The fact that the Conards were not permitted to enter the federal law suit which led to the agreement in no way forecloses them from now asserting their rights under the terms of the agreement.

I believe the opinion of the Court of Appeals is well-reasoned and reaches the correct result. I would deny transfer in this case.