CITY OF GARY COMMON COUNCIL, Appellant–Plaintiff,

v.

WHITE RIVER ENVIRONMENTAL PARTNERSHIP—GARY, an Indiana General Partnership consisting of United Water Services Gary, LLC, and IWC Services, Inc., Appellee–Defendant.

No. 45A03–9809–CV–386.

Court of Appeals of Indiana.

July 8, 1999.

Rehearing Denied Sept. 16, 1999.

Douglas M. Grimes, Gary, Indiana, Attorney for Appellant.

David C. Jensen, Paul A. Rake, John P. Twohy, Hammond, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

Appellant–Plaintiff, City of Gary Common Council ("Council"), appeals from the trial court's order denying its Verified Motion for Temporary Restraining Order and granting Appellee–Defendant, White River Environmental Partnership—Gary's ("WREP") Motion to Dismiss.[1]

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Gary Sanitary District ("GSD") executed a contract with WREP on April 10, 1998, whereby WREP became an independent contractor responsible for operating and maintaining the City of Gary's ("City") wastewater treatment and sewage collection operations. The events which culminated in the GSD–WREP contract began in 1978. At that time, the United States, through the Environmental Protection Agency ("EPA"), brought suit against the City and GSD for violations of the federal Clean Water Act and the National Pollutant Discharge Elimination

---

1. Because the motion to dismiss issue is dispositive, we do not reach the other issues presented by Council in this appeal.

System ("NPDES") permit which the EPA had issued to GSD. The EPA's complaint alleged that the City and GSD had failed to comply with the applicable legal limits on effluent pollutants such as cadmium, chromium, copper, lead, and mercury required by the Clean Water Act and their NPDES permit.

Following several consent decrees and a number of motions for orders to show cause by the EPA due to the City's and GSD's continued failure to bring its wastewater and sewage systems into compliance, a final Consent Decree was entered by the United States District Court for the Northern District of Indiana, Judge Rudy Lozano presiding, on October 23, 1992.[2] The terms of the Consent Decree contained numerous remedial measures to bring the City and GSD into compliance with federal standards, imposed civil penalties, and compelled funding for a remediation study of the Grand Calumet River.

In addition, the federal Consent Decree created the position of "Special Administrator," who was vested with the authority under Rule 70 of the Federal Rules of Civil Procedure "to perform any act necessary to achieve expeditious compliance with the Decree and NPDES permit." *Record* at 327–28. Significantly, the Consent Decree required the Special Administrator to hire an independent entity, subject to the EPA's approval, to run the City's wastewater treatment and sewage collection operations.

After being elected mayor of the City, Scott King was appointed Special Administrator and commenced contract negotiations between GSD and WREP for management and maintenance of the wastewater and sewage facilities. Following over two years of negotiations between GSD and WREP, a contract was executed on April 10, 1998. During the negotiations, Council passed Ordinance No. 6977 on March 3, 1998, which repealed Ordinance No. 6876. Ordinance No. 6876 had incorporated as local law IC 36–1–14.3–1 to –12,[3] the Public–Private Agreements Act, which permits agreements

between a governmental body and a private operator to construct, operate, and maintain a public facility. Thereafter, Council advised WREP in a letter dated March 19, 1998 that Ordinance No. 6977 had been enacted, and that the repeal of Ordinance No. 6876 rendered any contractual agreement between WREP and GSD illegal and void. WREP, however, proceeded under the GSD–WREP contract as planned.

On May 29, 1998, Council filed its Verified Motion for Temporary Restraining Order Without Written or Oral Notice against WREP in the Lake Circuit Court, alleging that a temporary restraining order was necessary "for the reason that Defendants seek to take over and control the operation, maintenance and management of a vital public resource (municipal wastewater treatment and sewage collection system) and expend public tax revenues without authorization under local, state or federal law." *Record* at 11. In the meantime, at 12:00 a.m. on June 1, 1998, the GSD board turned operations over to WREP, effectuating transfer of all GSD employees and commencing their health insurance, pension plan sponsorships, income tax withholding arrangements, and other benefits as WREP employees.

A hearing on Council's request for a temporary restraining order ("TRO") was held on June 2 and continued on June 4, 1998. At the commencement of the hearing on June 4, WREP presented its Motion to Dismiss or Stay in the Alternative, claiming that the court did not have jurisdiction to hear the matter, and in the alternative, that GSD was an indispensable party compelling stay of any further activity pending its joinder. Having taken the parties' motions under advisement, the trial court denied Council's Motion for Temporary Restraining Order and granted WREP's Motion to Dismiss. Council now appeals.

## DISCUSSION AND DECISION

The crux of WREP's Motion to Dismiss and its argument on appeal is that jurisdic-

---

2. The Consent Decree was entered under Cause Nos. H78–29 and H86–540.

3. IC 36–1–14.3–1 to –12 was repealed and replaced by IC 5–23–1–1 to –7, effective July 1, 1998.

tion over GSD and the issue of its authority to enter into its contract with WREP is vested in the federal district court that entered the Consent Decree, to the exclusion of any relief sought in a state court. It argues that the validity of the Consent Decree and the obligation of the signatories to comply with the Decree may not be challenged in a collateral state court proceeding.

In response, Council contends that its request for a TRO involved solely state issues which had not yet been decided, namely the validity of local Ordinance No. 6977 and its effect on WREP's ability to contract with GSD. According to Council, the Consent Decree has nothing to do with the issues raised by its Motion for Temporary Restraining Order and as such, the trial court's decision to grant WREP's Motion to Dismiss was erroneous.

▆ A collateral attack on a judgment has been defined as a judicial proceeding pursued to avoid, defeat, evade, or deny the validity and effect of a valid judgment or decree. *In re Chapman*, 466 N.E.2d 777, 780 (Ind.Ct.App.1984). The Council's Motion for Temporary Restraining Order against WREP "inescapably implicates the decree and ... validation of [its] claim would adversely affect implementation of the decree." *Indiana Dep't of Environmental Management v. Conard*, 614 N.E.2d 916, 922 (Ind. 1993). As such, Council's attempt to invalidate the GSD–WREP contract executed pursuant to the Consent Decree amounts to an impermissible collateral attack against that Decree.

At the hearing on its motion, Council argued, "we're not here asking the Court to enforce the consent decree; we're here asking this Court to enforce [Ordinance No. 6977]." *Record* at 217. However, we fail to see how the trial court could have enforced Ordinance No. 6977, which makes the GSD–WREP contract illegal, without implicating and indeed preventing the operation of the federal Consent Decree. The Consent Decree specifically requires the Special Administrator, on behalf of the City and GSD, to hire an independent contractor to run the City's wastewater system and sewage plant:

"The Special Administrator *shall appoint* an independent contractor, subject to the prior approval of the U.S. EPA. The contractor *shall be responsible* for operation and maintaining the plant in full compliance with the effluent limits and other conditions contained in the Defendants' NPDES permit including the pretreatment program, and successor permits and programs, but the contractor's undertaking shall not relieve Defendants of any obligations under the Decree, their NPDES permit or the Clean Water Act.... Under the supervision of the Special Administrator, Defendants *shall have contracted* with the contract operator within thirty (30) days after entry of the Decree."

*Record* at 329–30 (emphasis added). Had the trial court granted Council's Motion for Temporary Restraining Order and declared the GSD–WREP contract void for violating Ordinance No. 6977, this would have necessarily affected implementation of the federal Consent Decree and its requirement that an independent contractor such as WREP be appointed. Although GSD was not made a party to Council's motion, temporarily restraining WREP from performing under its contract with GSD would have an inescapable impact on GSD, and as such, GSD's obligations under the Consent Decree.

Moreover, the district court that entered the Consent Decree retained jurisdiction "to enforce compliance with the terms and conditions of this Consent Decree and to take any action necessary or appropriate for its interpretation, construction, execution or modification." *Record* at 341. To allow WREP to be temporarily restrained from performing under a contract made mandatory by the federal Consent Decree " 'would raise the specter of inconsistent or contradictory proceedings, would promote continued uncertainty thus undermining the concept of a final judgment and would violate the policy of promoting settlement' of actions alleging violations of federal law." *Conard*, 614 N.E.2d at 922 (quoting *Marino v. Ortiz*, 806 F.2d 1144, 1146 (2d Cir.1986), *aff'd by an equally divided court*, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988)). Council was one of the parties to the Consent Decree, where the Decree specifies that "Defendants' legislative

organ, the City of Gary Common Council, is part of the City of Gary and as such *is already before this Court as it is a component of a party Defendant in this matter,* the City of Gary." *Record* at 273 (emphasis added). Permitting Council's collateral attack on the Consent Decree by way of a TRO would subject WREP, GSD, the City, and the Council to ·inconsistent obligations with regard to their ability to comply with the mandates of the Decree, and would defeat almost twenty years of litigation, lengthy negotiations, and the detailed settlement which was the product of that process.

■ Council's Motion for Temporary Restraining Order against WREP was an impermissible collateral attack on the Consent Decree, over which continuing jurisdiction remains with the federal court that entered the Decree. We find no error in the trial court's grant of WREP's Motion To Dismiss.[4]

Affirmed.

GARRARD, J., and NAJAM, J., concur.

---

4. Council argues in its brief that WREP waived any objection to the Lake Circuit Court's exercise of jurisdiction of the instant case due to its failure to make an objection at the earliest opportunity. *Appellant's Brief* at 16–18. It is well settled, however, that one may contest the court's jurisdiction over the subject matter of the litiga-tion *at any time. Wolfe v. Tuthill Corp., Full–Rite Div.,* 532 N.E.2d 1, 2 (Ind.1988). Indeed, where a court lacks subject matter jurisdiction, a judgment of that court is void. *Chapman,* 466 N.E.2d at 779 (citing *D.L.M. v. V.E.M.,* 438 N.E.2d 1023, 1027 (Ind.Ct.App.1982)).