The HUNT CORP., Petitioner,

v.

DEPARTMENT OF STATE REVENUE,
Respondent.

No. 49T10–9410–TA–00246.

Tax Court of Indiana.

April 20, 1999.

Robert E. Johnson, Francis S. Connelly, Krieg DeVault Alexander & Capehart, Indianapolis, Indiana, Attorneys for Petitioner.

Jeffrey A. Modisett, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

The Hunt Corporation (Hunt) appeals a final determination of the Department of State Revenue (Department) denying its claim for refund of corporate income taxes it paid for the 1983 through 1985 tax years.

## FACTS AND PROCEDURAL HISTORY

Hunt is a holding company domiciled in Indiana. Hunt and its subsidiaries (the affiliated group) conducted business activities in a number of states, including Indiana. Hunt and its subsidiaries filed consolidated returns in Indiana for the tax years at issue.[1] *See* IND.CODE § 6–3–4–14 (1982).[2] The Department audited these returns and concluded that Hunt owed Indiana corporate income taxes[3] and interest in the amount of $273,-311.08. Thereafter, the Department issued notices of proposed assessments to Hunt. *See id.* § 6–8.1–5–1(a) (1998); *Horrall v. Department of State Revenue,* 687 N.E.2d 1219, 1221 (Ind. Tax Ct.1997), *review denied.* Hunt filed a written protest. *See* IND.CODE § 6–8.1–5–1(c) (1998). On March 10, 1992, the Department issued its final determination in a letter of findings denying Hunt's protest in part and sustaining Hunt's protest in part. On December 7, 1992, the Department issued demand notices for payment of this alleged tax liability. On December 17, 1992, Hunt paid that amount to the Department. On May 4, 1994, Hunt filed a claim for refund alleging that the Department had erroneously collected $175,526.42 in corporate income taxes.[4] *See* IND.CODE § 6–8.1–9–1 (1998); *City Securities Corp. v. Department of State Revenue,* 704 N.E.2d 1122, 1125 (Ind. Tax Ct.1998). In its claim for refund, Hunt alleged that the Department had made certain errors in calculating Hunt's tax liability. The Department denied the refund claim. This original tax appeal ensued. Hunt filed a motion for summary judgment on March 1, 1996.[5] Hunt raises

---

1. The Court will refer to Hunt and its subsidiaries collectively as Hunt.

2. Where necessary, the Court will cite to the version of the Indiana Code applicable to the tax years at issue.

3. IND.CODE § 6–2.1–2–2 (1982) (gross income tax) (codified in present form at *id.* § 6–2.1–2–2 (1998)); § 6–3–2–1 (1982) (adjusted gross income tax) (codified in present form at *id.* § 6–3–2–1 (1998)); § 6–3–8–1 (1982) (supplemental net corporate income tax) (codified in present form at *id.* § 6–3–8–1).

4. This original tax appeal only involves Hunt's adjusted gross income tax and supplemental net income tax liability.

5. In support of its motion for summary judgment, Hunt has designated two affidavits of its Vice President and Controller, Mr. Ronald E. Schuster. *See* IND. T.R. 56(A). In response to

five issues in its motion for summary judgment. Specifically, Hunt contends that the Department erroneously concluded that certain income items constituted adjusted gross income [6] taxable by Indiana, namely, income from corporate partnerships in which members of the affiliated group were partners and interest income derived from an installment sale of real property by a member of the affiliated group. Hunt also contends that the Department erroneously concluded that certain members of the affiliated group could not file a consolidated return because they did not have adjusted gross income derived from Indiana sources. Additionally, Hunt contends that the Department inadvertently treated capital gains realized from a sale of real property as taxable by Indiana, though the Department concluded that the capital gains were not subject to Indiana's power to tax. Hunt's final contention is that the Department erroneously calculated the affiliated group's Indiana apportionment factors. The resolution of this issue necessarily depends on the Court's resolution any issues relevant to the affiliated group's apportionment factors. Additional facts will be added as necessary.

## ANALYSIS AND OPINION

### Standard of Review

This Court reviews the final determinations of the Department de novo and is bound by neither the evidence presented nor the issues raised at the administrative level. *See* IND.CODE § 6-8.1-9-1(d) (1998); *Hyatt Corp. v. Department of State Revenue*, 695 N.E.2d 1051, 1052-53 (Ind. Tax Ct.1998), *review denied.* Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See*

Hunt's motion, the Department has moved the Court to grant the Department summary judgment under Trial Rule 56(B), which allows a court to grant summary judgment to the non-moving party. *See generally* 3 HARVEY, INDIANA PRACTICE, RULES OF PROCEDURE ANNOTATED 625-26 (1988 & Supp.1998). The Court will treat the Department's motion as a cross-motion for summary judgment. *See City Securities Corp.*, 704 N.E.2d at 1125 n. 1.

*Hyatt Corp.*, 695 N.E.2d at 1053. Cross-motions for summary judgment do not alter this standard. *See id.*

### Discussion

The members of the affiliated group, i.e., Hunt and its subsidiaries, conduct their business enterprise in many different states, including Indiana. Not all of the income from this multi-state business enterprise is taxable by Indiana. Indiana may only tax a certain part of that multi-state income—namely, adjusted gross income "derived from sources within the State of Indiana." IND.CODE ANN. § 6-3-2-1(b) (1982). Indiana has enacted a statutory scheme in order to determine what adjusted gross income is derived from Indiana sources. *See id.* § 6-3-2-2 (1982) (codified in present form at *id.* § 6-3-2-2 (1998)). Before discussing how this statutory scheme applies to the income items at issue, the Court will review the constitutional restrictions on a state's ability to tax the income of a multi-state corporate enterprise. After discussing the tax treatment of the income items in dispute, the Court will then evaluate Hunt's contention, that in denying Hunt's refund claim, the Department erroneously concluded that certain members of the affiliated group could not be included on the affiliated group's consolidated return.

The Constitution restricts a state's ability to tax the multi-state (interstate) income of non-domiciliary corporations. *See Allied-Signal, Inc. v. Division of Taxation*, 504 U.S. 768, 772, 112 S.Ct. 2251, 2255, 119 L.Ed.2d 533 (1992). These restrictions include the requirement of a "minimal connection" between the interstate activity giving rise to the income sought to be taxed and the taxing state, *see Mobil Oil Corp. v. Commissioner of Taxes of Vt.*, 445 U.S. 425, 436-37, 100

6. In their briefs, the parties, for the most part, speak only in terms of Hunt's adjusted gross income tax liability, rather than Hunt's adjusted gross income tax liability and Hunt's supplemental net income tax liability. However, because the two taxes work together, *see* IND.CODE § 6-3-8-2(b) (1982) (codified in present form at *id.* § 6-3-8-2(b) (1998)); § 6-3-8-5 (1982) (codified in present form at *id.* § 6-3-8-5 (1998)), the Court will follow the parties' example. Accordingly, any references to adjusted gross income tax include the supplemental net income tax.

S.Ct. 1223, 1231–32, 63 L.Ed.2d 510 (1980), and the requirement that there must be a rational relation between the "income attributed to the taxing State and the intrastate value of the corporate business." *Allied–Signal,* 504 U.S. at 772, 112 S.Ct. at 2255. The Constitution, however, does not require that a state attempt to isolate wholly intrastate income-producing activity for purposes of determining what income is taxable by that state. *See id.,* 112 S.Ct. at 2255. Instead, the state may tax an apportioned sum of the corporation's multi-state income if that income derives from a unitary business. *See id.,* 112 S.Ct. at 2255.

The constitutional limitations on a state's ability to tax the income of a domiciliary corporation are somewhat murkier. Although domicile itself affords a state the ability to tax all the income of a domiciliary corporation, a state is forbidden to tax all of that income where another state may tax an apportioned sum of that income. *See Standard Oil Co. v. Peck,* 342 U.S. 382, 384, 72 S.Ct. 309, 310, 96 L.Ed. 427 (1952); *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 447–48, 99 S.Ct. 1813, 1820–21, 60 L.Ed.2d 336 (1979); *see also Mobil Oil,* 445 U.S. at 444–45, 100 S.Ct. at 1235 ("Taxation by apportionment and taxation by allocation to a single situs are theoretically incommensurate, and if the latter method is constitutionally preferred, a tax based on the former cannot be sustained."). Therefore, as a practical matter, there is little difference between a domiciliary and a non-domiciliary corporation with respect to a state's ability to tax income subject to apportionment.

As described above, it is constitutionally permissible for a state to tax an apportioned share of a corporate enterprise's multi-state income. This means that states do not have to evaluate each income generating activity of the corporate enterprise in order to determine whether the income gained from that activity is properly taxable by the state. Instead, the state may look at all of the income gained by the corporate enterprise's business activity and determine the state's fair share of that total.

There are two main rationales behind this rule. The first is that it is often very diffi-cult for a state to determine the precise amount of income generated by a multi-state corporate enterprise's in-state activities. *See Container Corp. of Am. v. Franchise Tax Bd.,* 463 U.S. 159, 164, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983) ("In the case of a more-or-less integrated business enterprise operating in more than one state, however, arriving a precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice."). Because the inherent difficulty in isolating the income generated by a corporate enterprise's in-state activities, the Supreme Court has held that a state may tax an apportioned share of all of the corporate enterprise's business income. *See Allied–Signal,* 504 U.S. at 778, 112 S.Ct. at 2258 ("Because of the complications and uncertainties in allocating the income of multi-state businesses to the several States, we permit States to tax a corporation on an apportionable share of the multi-state business carries on in part in the taxing State.") The state determines its apportioned share of that income by using a formula that compares the corporate enterprise's in-state activities to all of its activities. *See Container Corp.,* 463 U.S. at 165, 103 S.Ct. at 2940; *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 460, 79 S.Ct. 357, 363, 3 L.Ed.2d 421 (1959) *quoted in Mobil Oil,* 445 U.S. at 436, 100 S.Ct. at 1231.

The second rationale behind this rule is that it more accurately reflects economic reality. The income of a multi-state corporate enterprise arises from the "operation of the business *as a whole* [and] it [is] misleading to characterize the income of the business as having a single identifiable 'source.' " *Mobil Oil,* 445 U.S. at 438, 100 S.Ct. 1223 (emphasis added). Accordingly, the use of separate accounting as means of attributing certain income of a multi-state corporate enterprise to a particular state may be flawed because it "may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale." *Id.* (citing *Butler Bros. v. McColgan,* 315 U.S. 501, 508–09, 62 S.Ct. 701, 703–04, 86 L.Ed. 991 (1942)). *See also Allied–Signal,* 504 U.S. at 783, 112 S.Ct. at 2261; *Container Corp.,* 463 U.S. at 164–65, 103

S.Ct. at 2940 (Separate or geographical accounting "often ignores or captures inadequately the many subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise.").

Of course, a state is not at liberty to fashion any apportionment rules it desires. A state's apportionment formula must reflect the way income is actually generated. *See Container Corp.*, 463 U.S. at 169, 103 S.Ct. at 2942. However, in the absence of action by Congress, the states have "wide authority to devise formulae for an accurate assessment of a corporation's intrastate ... income." *Allied–Signal*, 504 U.S. at 780, 112 S.Ct. at 2259. *Cf. Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 445, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940) ("We must be on guard against imprisoning the taxing power of the states within formulas that are not compelled by the Constitution...."). Moreover, a state's apportionment formula must be internally consistent, that is, it must not subject income to double taxation. *See Container Corp.*, 463 U.S. at 170–71, 103 S.Ct. at 2943.

In addition, there are constitutional limitations on what income may be deemed as part of the apportionable base. *See id.* at 165–66, 103 S.Ct. at 2940–41. These limitations arise from the unitary business principle. The unitary business principle owes its origin to old property tax cases. In attempting to value railroad and telegraph companies, the states "encountered the difficulty that what makes such a business valuable is the enterprise as a whole, rather than the track or wires that happen to be located within a State's borders." *Allied–Signal*, 504 U.S. at 778, 112 S.Ct. at 2258. The U.S. Supreme Court held that the states could base their tax assessments upon "the proportionate part of the value resulting from the combination of the means by which the business was carried on, a value existing to an appreciable

extent throughout the domain of operation."[7] *Adams Express Co. v. Ohio State Auditor,* 165 U.S. 194, 220–21, 17 S.Ct. 305, 309, 41 L.Ed. 683 (1897) *quoted in Allied–Signal,* 504 U.S. at 778–79, 112 S.Ct. at 2258. In other words, a state may look beyond its borders in order to determine the value of things within its borders. *See Wallace v. Hines,* 253 U.S. 66, 69, 40 S.Ct. 435, 436, 64 L.Ed. 782 (1920).

The unitary business principle has been applied to state taxation of corporate income. The unitary business principle allows a state to consider all of a corporate enterprise's income arising from the enterprise's unitary business in calculating that state's apportioned share of that income. *See Allied–Signal,* 504 U.S. at 780, 112 S.Ct. at 2259 ("[W]e permit States to tax a corporation on an apportionable share of the multi-state business carried on in part in the taxing State. That is the unitary business principle."). However, where a corporate enterprise receives income from "unrelated business activity which constitutes a discrete business enterprise," *id.,* 112 S.Ct. at 2259 (internal quotation marks and citations omitted), a state may not include that income in the apportionable base.[8] *See id.,* 112 S.Ct. at 2259–60; *Container Corp.,* 463 U.S. at 165–66, 103 S.Ct. at 2940–41; *ASARCO, Inc. v. Idaho Tax Comm'n,* 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982); *F.W. Woolworth Co. v. New Mexico Taxation & Revenue Dep't,* 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982); *see also generally* JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 8.09[6] (3d ed. 1998). To allow a state to do so, would allow a state to tax business activity with no relation to that state. This would result in a state taxing income that in fairness could not be attributed to the corporation's activities within the taxing state, *see Allied–Signal,* 504 U.S. at 780, 112 S.Ct. at 2259, and would allow a state to tax where it has given noth-

---

7. The existence of a link between a unitary business' in-state and out-of-state activities is a prerequisite to the ability of the taxing state to apportion income. *See Container Corp.,* 463 U.S. at 166–67, 103 S.Ct. at 2940–41. Where there is no link, formula apportionment is not a reasonable method of attributing income to that state. *See id.,* 103 S.Ct. at 2940–41.

8. Of course, where a corporate enterprise conducts an unrelated business enterprise within the taxing state, that state may reach the income generated by the unrelated business enterprise.

ing in return.[9] *See Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940).

Where income does not result from a unitary business,[10] it is not subject to apportionment. However, it still may be taxed in accordance with allocation rules. When income is allocated, it is attributed to a single taxing jurisdiction to the exclusion of all others. *See ASARCO*, 458 U.S. at 345–48, 102 S.Ct. at 3124–25. (O'Connor, J., dissenting). Allocation rules are usually based on the commercial domicile of the corporation and the business situs of the income generating activity. As a constitutional matter, the domiciliary status of a corporation with multistate income is of little relevance with respect to the income derived from a unitary business. However, commercial domicile is very important with respect to how income not derived from a unitary business is taxed. *See id.* at 346, 102 S.Ct. at 3124 (O'Connor, J., dissenting) ("The Court's decision today thus could be read as broadly hinting that a domiciliary state enjoys a preference of constitutional dimension justifying its—and only its—taxation of [non-business] income.")

Indiana's adjusted gross income tax reflects these constitutional limitations. *See Department of State Revenue v. Bethlehem Steel Corp.*, 639 N.E.2d 264, 266–67 n. 4 (Ind.1994). Indiana only levies adjusted gross income tax on corporate income attributable to Indiana. In order to determine what income is attributable to Indiana, it must be first determined whether the income sought to be attributed is business or non-

business income. *See* IND.CODE § 6–3–2–2(a) (1982). Business income is defined by statute as:

income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitutes [sic] integral parts of the taxpayer's regular trade or business operations.

IND.CODE § 6–3–1–20 (1982) (codified in present form at *id.* § 6–3–1–20 (1998)); *see also* IND. ADMIN. CODE tit. 45, r. 3.1–1–30 (1984) (codified in present form at *id.* r. 3.1–1–30 (1996)) (construing trade or business). If the income is non-business income (non-business income is defined by statute as all income that is not business income, IND.CODE § 6–3–1–21 (1982) (codified in present form at *id.* § 6–3–1–21 (1998))), then it is allocated to a particular state under allocation rules found in subsections 6–3–2–2(h) through 6–3–2–2(k).[11] These allocation rules are based on the commercial domicile of the corporation and the business situs of the income producing activity.

If the income is business income, the income attributable to Indiana is calculated by using a three-factor apportionment formula.[12] *See generally Sherwin–Williams Co. v. Department of State Revenue*, 673 N.E.2d 849, 851 (Ind. Tax Ct.1996). This apportionment formula takes all of the business income of the corporate taxpayer from both within and without the state and multiplies that figure by a fraction. The fraction is determined by adding the value of the corporate taxpayer's property, payroll, and sales within Indiana

---

9. In reality, the determination of where a unitary business enterprise ends and where a discrete business enterprise begins is not an easy one. On this point, see *ASARCO, Inc. v. Idaho Tax Comm'n*, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (O'Connor, J., dissenting). Accordingly, the U.S. Supreme Court has held that it would, "if reasonably possible, defer to the judgment of state courts in deciding whether a particular set of activities constitute a unitary business." *Container Corp.*, 463 U.S. at 175, 103 S.Ct. at 2945. For a discussion of various states' approaches to defining the scope of a unitary business, see HELLERSTEIN & HELLERSTEIN, *supra*, ¶ 8.10.

10. This type of income is usually described as "non-business income."

11. The business/non-business income nomenclature found in section 6–3–2–2 reflects the unitary business income and non-unitary business income distinction found in U.S. Supreme Court decisions. *See Container Corp.*, 463 U.S. at 167, 103 S.Ct. at 2941 (discussing California statutory distinction between "business income" and "non-business" income).

12. The three-factor formula has been specifically approved by the U.S. Supreme Court and has become "something of a benchmark against which apportionment formulas are judged." *Container Corp.*, 463 U.S. at 170, 103 S.Ct. at 2943.

and dividing that amount by the value of the corporate taxpayer's property, payroll and sales both within and without Indiana.[13] The final figure is deemed to represent the business income from sources within Indiana.[14] This figure is added to the non-business income allocated to Indiana in order to determine the corporate taxpayer's adjusted gross income from sources within Indiana, unless the allocation and apportionment[15] rules "do not fairly represent the taxpayer's income derived from sources within the state of Indiana." IND.CODE § 6-3-2-2(*l*) (1982).

### A. The Corporate Partnership Income

During the tax years at issue, members of the affiliated group received income from various corporate partnerships[16] in which members of the affiliated group (Hunt's subsidiaries) were partners. The parties dispute how this income was to be taxed.[17] The Department concluded that the income constituted adjusted gross income for the affiliated group. The Department further concluded that the income constituted business income for the affiliated group and that it was therefore subject to apportionment based on the affiliated group's property, payroll, and sales factors.[18]

Hunt contends that this was erroneous. Hunt argues that the statutory provision dealing with taxation of affiliated groups and the Department's regulations dealing with income from corporate partnerships, when taken together, require that the affiliated group's adjusted gross income derived from sources within Indiana be calculated by apportioning the income at the partnership level (as opposed to the affiliated group or member corporation level). This would result in a relatively small amount of income from the partnerships being apportioned to Indiana because the partnerships, for the most part, had small amounts of Indiana property, payroll, and sales or none at all.

An example of the how the parties treat the income arising from one of the partnerships will suffice to illustrate their respective positions. One of Hunt's subsidiaries and a member of the affiliated group, Huber, Hunt, and Nichols (HHN), was engaged in a partnership with the George Hyman Construction Company, a Maryland corporation. In 1983, HHN's share of the partnership's income resulted in adjusted gross income of $301,960. The Department concluded that all of that income should be included in the affiliated group's adjusted gross income. That income (along with all other adjusted gross income of the affiliated group) would then be multiplied by the affiliated group's apportionment factors. Hunt concludes otherwise. In Hunt's view, the $301,960 should be apportioned on the basis of the partnership's factors before inclusion into the adjusted gross income of the affiliated group. This would result in only $7,449.35 being included

---

13. Effective January 1, 1992, the Indiana General Assembly changed the method of formulary apportionment to phase in a double weight sales factor. *See* IND.CODE § 6-3-2-2(b) (1998); Lawrence A. Jegen III, *Double Weight Sales Factor Phase-in*, 35 RES GESTAE 184 (1991).

14. Effective January 1, 1984, the Indiana General Assembly amended subsection 6-3-2-2(b) to remove the requirement that apportionment be conditioned on an inability to separate business income derived from sources within Indiana and business income derived from sources without Indiana. *See* Act of Apr. 21, 1983, No. 82, § 4, 1983 Ind. Acts 672, 676. This was a significant change in the law. As will be seen, the Court is already engaging in a separate analysis of the treatment of income received from corporate partnerships by Hunt during 1983.

15. It is important to remember that the terms apportionment and allocation are not interchangeable. When income is allocated, it is

deemed to come in its entirety from a particular state, thereby making that income taxable by only one state. When income is apportioned, it is divided for tax purposes among the various states in which the taxpayer receives such income. *See Roger Dean Enters. v. State Dep't of Revenue*, 387 So.2d 358, 361 (Fla.1980).

16. Some of the partnerships were actually joint ventures. However, because Hunt and the Department have elected to refer to both as partnerships, the Court will do so as well. The difference in nomenclature has no bearing on the outcome of this case.

17. For a discussion of how states generally tax income derived from corporate partnerships, see HELLERSTEIN & HELLERSTEIN, *supra*, ¶ 6.12.

18. Hunt does not dispute that the income from the corporate partnerships constituted business income.

in the affiliated group's adjusted gross income.[19]

Hunt's alternative argument is that under subsection 6–3–2–1(b), much of the income is not includable in the consolidated group's Indiana adjusted gross income tax because the income was not derived from sources within Indiana. Because subsection 6–3–2–1(b) limits the reach of Indiana's taxing authority to Indiana sourced adjusted gross income, Hunt concludes that it is impossible to tax most of this income.

■ Before turning to Hunt's arguments, the Court notes that the parties presented the case as if the three tax years at issue were governed by substantially the same law. They made the same arguments with respect to all three tax years and have asked the Court to treat each tax year in the same manner as the others. During the tax years at issue, however, the Indiana General Assembly significantly changed the income tax laws with respect to corporate partnerships. This means that the Court must engage in a separate analysis for the 1983 tax year. Because this separate analysis is dispositive of Hunt's contentions with respect to the 1983 tax year, the Court sees no need to discuss Hunt's argument concerning the taxation of affiliated groups and Hunt's alternative argument concerning the operation of subsection 6–3–2–1(b) with respect to that tax year or the change in subsection 6–3–2–2(b) described above.[20]

Prior to 1984, corporate partnerships[21] were taxed on their adjusted gross income. *See* IND.CODE § 6–3–2–1(b) (1982); *see also Park 100 Devel. Co. v. Department of State Revenue*, 429 N.E.2d 220, 223 (Ind.1981). Because the income derived from a corporate partnership also constituted adjusted gross income for the corporate partner, that income was exempted from adjusted gross income tax in order to avoid double taxation

(i.e., once at the corporate partnership level and once at the corporate partner level) of the partner's distributive share. *See* IND. CODE § 6–3–2–3(e) (1982) (repealed 1984).

In 1984, the Indiana General Assembly decided to change this scheme. Rather than taxing corporate partnerships on their income and exempting the partner's income derived from a corporate partnership, the Indiana General Assembly decided to exempt corporate partnerships from income taxation and remove the exemption of income derived from a corporate partnership. Act of Mar. 2, 1984, No. 47, § 4, 1984 Ind. Acts 617, 618. This change went into effect January 1, 1984. As a result, corporate partnerships are treated like any other partnerships. *See Longmire v. Department of State Revenue*, 638 N.E.2d 894, 896 (Ind. Tax Ct.1994) (discussing income tax treatment of partnerships).

This change, as will be shown, had a dramatic, though not immediately obvious, effect on apportioning corporate partnership income. Under the pre–1984 law, a corporate partnership was required to pay adjusted gross income tax derived from sources within Indiana. *See* IND.CODE § 6–3–2–1(b) (1982). Where the corporate partnership had business income derived from sources within and without Indiana, the apportionment scheme found in section 6–3–2–2 controlled the attribution of the partnership's income to Indiana. *See* IND. ADMIN. CODE tit. 45, r. 3.1–1–151 (1984) (corporate partnerships treated as corporations for purposes of determining adjusted gross income tax) (repealed 1993). This means that the corporate partnership income attributable to Indiana was calculated with respect to the partnership's property, payroll, and sales factors.

Once the income passed from the corporate partnership to the affiliated group, all of that income was exempt from adjusted gross

---

**19.** Although the parties do not raise the point, it appears that under Hunt's view, the partnership income would be subject to factor apportionment two times. First, the income would be subject to factor apportionment in order to determine how much of the income would be considered in the affiliated group's adjusted gross income. Second, the income would be subject to factor apportionment in determining the adjusted gross

income derived from Indiana sources of the affiliated group.

**20.** *See supra* note 14.

**21.** *See* IND.CODE § 6–3–1–19.5 (1982) (repealed 1984) (defining corporate partnership as partnership that has at least one corporation as a member).

income tax. *See* IND.CODE § 6–3–2–3(e) (1982). Therefore, the income received from the corporate partnerships was not subject to apportionment because it was exempt from adjusted gross income tax in the first place. *Cf. Department of State Revenue v. Endress & Hauser, Inc.*, 404 N.E.2d 1173, 1176 (Ind. Ct.App.1980) (because there was no adjusted gross income, there was no income to be apportioned).

However, the Department included the income from the corporate partnerships in the affiliated group's adjusted gross income. The Department did so because none of the corporate partnerships filed Indiana income tax returns. *See* IND.CODE § 6–3–4–10 (1982) (codified in present form at *id.* § 6–3–4–10 (1998)); IND. ADMIN. CODE tit. 45, r. 3.1–1–105 (1984) (codified in present form at *id.* r. 3.1–1–105 (1996)) (requiring corporate partnerships to file income tax returns). The income was then apportioned based on the affiliated group's property, payroll, and sales factors. This was plainly incorrect. In 1983, income from corporate partnerships was exempt from adjusted gross income tax. IND. CODE § 6–3–2–3(e) (1982). Consequently, the income from the corporate partnerships should not have been included in the adjusted gross income of the affiliated group. Therefore, the Department erred in doing so. Consequently, the Court holds that none of the income from the corporate partnerships should have been subject to Indiana adjusted gross income tax for 1983.

The fact that none of the corporate partnerships filed Indiana income tax returns or paid adjusted gross income tax does not alter this result. Subsection 6–3–2–3(e) does not condition the exemption of a corporation's income from a corporate partnership income from adjusted gross income tax on the corporate partnership filing an Indiana income tax return or paying adjusted gross income tax. Therefore, the failure of the corporate partnerships to file Indiana income tax returns or pay the tax does not subject the corporate partnership income of the affiliated group to the adjusted gross income tax. Rather, to the extent that the corporate partnerships owe Indiana adjusted gross income tax, the Department may collect that tax (i.e., the tax

owed by the corporate partnerships themselves) from the corporate partners. *See* IND.CODE § 6–3–4–8.5 (1982) (codified in present form at *id.* § 6–3–4–8.5 (1998)). Instead of seeking to collect the tax owed by the corporate partnerships, the Department treated the income received from the corporate partnerships as non-exempt. The law required otherwise.

■ Now that the Court has resolved the dispute concerning the 1983 tax year, the Court turns to the parties' arguments with respect to the remaining tax years at issue Hunt's first argument concerns how the adjusted gross income of an affiliated group of corporations who elect to file a consolidated return is calculated. Under section 6–3–4–14, an affiliated group of corporations may elect to file a consolidated return. The principal purpose of this provision is to treat an affiliated group of corporations, which may have been separately incorporated for various reasons, as a single taxpayer for purposes of computing the income tax liability of the group. *See Associated Ins. Cos. v. Department of State Revenue*, 655 N.E.2d 1271, 1274–75 (Ind. Tax Ct.1995), *review denied.*

In order to accomplish this single taxpayer treatment, the Indiana legislature has incorporated by reference the U.S. Treasury regulations dealing with affiliated groups and consolidated returns. *See* IND.CODE ANN. § 6–3–4–14(c) (1982); *Associated Ins. Cos.*, 655 N.E.2d at 1276 n. 6. Subsection 6–3–4–14(c) provides:

> For purposes of IC 6–3–1–3.5(b), the determination of "taxable income," as defined in Section 63 of the Internal Revenue Code, of any affiliated group of corporations making a consolidated return ... shall be determined pursuant to the regulations prescribed under Section 1502 of the Internal Revenue Code.

Under those regulations, each member of the affiliated group is required to calculate its taxable income separately. *See* Treas. Reg. § 1.1502–11(a) (1983) (codified in present form at Treas. Reg. § 1.1502–11(a) (1998)). Therefore, in Hunt's view, each member of the affiliated group must, in the course of calculating its taxable income separately, determine how much of the income derived

from the partnerships should be apportioned to Indiana. In order to do so, Hunt continues, this calculation must occur at the partnership level due to the operation of IND. ADMIN. CODE tit. 45, r. 3.1–1–153 (1996).

There are a number of flaws in this argument, the first of which is Hunt's misunderstanding of the term "taxable income" as it is used in the Indiana adjusted gross income tax scheme. Apparently, Hunt believes that "taxable income" as used in that scheme means the amount of income that will be subject to the Indiana adjusted gross income tax. It does not. "Taxable income" as it is used in the Indiana adjusted gross income tax scheme is "defined in Section 63 of the Internal Revenue Code," IND.CODE § 6–3–1–3.5(b) (Supp.1985) (codified in present form at *id.* § 6–3–1–3.5 (1998)), and it is used as a *starting point* for determining Indiana adjusted gross income. *See Cooper Indus. v. Department of State Revenue,* 673 N.E.2d 1209, 1212–13 (Ind. Tax Ct.1996); *Associated Ins. Cos.,* 655 N.E.2d at 1276 n. 6. Consequently, a calculation of "taxable income" *does not include* a calculation of the amount of adjusted gross income to be apportioned to Indiana. Rather, a calculation of "taxable income" involves only a calculation of *federal* taxable income as defined by I.R.C. § 63. *See Cooper Indus.,* 673 N.E.2d at 1213; *Associated Ins. Cos.,* 655 N.E.2d at 1276 n. 6. In the case of an affiliated group, the only change is that the calculation of "taxable income" is made with reference to federal regulations applicable to the calculation of the federal taxable income of affiliated groups. *See* IND.CODE § 6–3–4–14(c).

Neither I.R.C. § 63, nor the Treasury Regulations applicable to affiliated groups contain any reference to apportionment.[22] Therefore, the command of subsection 6–3–4–14(c) does not have nearly the reach Hunt ascribes to it. Subsection 6–3–4–14(c), through its incorporation of federal regulations, only instructs how "taxable income,"

which is the starting point for the calculation of Indiana adjusted gross income, is to be determined. Therefore, Hunt's attempt to read subsection 6–3–4–14(c) as requiring factor apportionment as a part of calculating the affiliated group's "taxable income" is incorrect. Consequently, it is impossible to conclude that subsection 6–3–4–14(c) requires factor apportionment of the income from the corporate partnerships before its inclusion into the adjusted gross income of the affiliated group.

The second flaw in Hunt's argument stems from its misunderstanding of IND. ADMIN. CODE tit. 45, r. 3.1–1–153 and its blithe assumption that section 6–3–2–2 does not apply to this issue. Hunt reads the regulation to require a calculation of the income derived from corporate partnerships at the partnership level. In its brief, Hunt states,

> The Taxpayer believes that the activities of the Taxpayer and its partnerships establish that [45] IAC 3.1–1–153 would be applicable in determining the Taxpayer's Adjusted Gross Income Tax. Regulations [sic] 45 IAC 3.1–1–153 provide that, "If the partnership derives business income from sources within and without Indiana, the business income derived from sources within Indiana shall be determined by the three (3) factor formula consisting of property, payroll and sales of the partnership."

(Pet'r Br. Supp. Summ. J. at 13). Hunt fails to give the Court the whole story. First, Hunt does not advise the Court about the applicability of section 6–3–2–2 to this issue.[23] Second, Hunt gives an incomplete picture of how the regulation, assuming that it was in effect during the tax years at issue, would apply to this issue.[24]

Section 6–3–2–2 is plainly applicable to this case. The fact that it does not specifically address the taxation of affiliated groups or the situation where a corporation receives

---

**22.** This should come as no surprise. As the Department noted at oral argument, attribution of income to a particular state is of no concern in the federal taxation arena. (Oral Arg. Tr. at 32–33).

**23.** In fact, Hunt fails to mention section 6–3–2–2 at all in its brief.

**24.** The Department points out in its brief that this regulation was not adopted until 1993, well after the tax years at issue here. Therefore, the regulation is not controlling.

income from a corporate partnership does not alter this conclusion. Section 6–3–2–2 is a general provision that deals with how of *all* of a corporate taxpayer's adjusted gross income is attributed by way of allocation and apportionment rules. It cannot be seriously disputed that affiliated groups of corporations are corporate taxpayers, *see* IND. ADMIN. CODE tit. 45, r. 3.1–1–20 (1984) (codified in present form at *id.* r. 3.1–1–20 (1996)), and consequently are subject to the apportionment and allocation rules contained in section 6–3–2–2. In addition, the fact that section 6–3–2–2 deals with the attribution of all of a corporate taxpayer's adjusted gross income means that income derived from a corporate partnership (which constitutes adjusted gross income for the corporation, *see* IND.CODE § 6–3–1–3.5(b) (Supp.1985)) is subject to section 6–3–2–2.

Under section 6–3–2–2, in order to determine where the income from the corporate partnerships is to be attributed, it must first be determined whether that income constitutes business or non-business income *for the affiliated group*.[25] That determination is made by ascertaining whether the affiliated group and the partnerships are engaged in a unitary business or not. If the income from the partnerships constitutes business income (i.e., if the affiliated group and the partnerships are engaged in a unitary business), under section 6–3–2–2, all of that income would be subject to apportionment based on an application of the affiliated group's[26] property, payroll, and sales factors. If the income from the partnerships constitutes non-business income for the affiliated group (i.e, if the affiliated group and the partnerships are not engaged in a unitary business), that income will be allocated to a particular jurisdiction.

Section 6–3–2–2 does not specifically address the question of whether a partnership's property, payroll, and sales factors may be considered in apportioning a corporation's business income derived from a corporate partnership. The regulation addresses this technical problem and provides a comprehensive description of the treatment of income derived from corporate partnerships. Mirroring the analysis required by section 6–3–2–2, the regulation makes the crucial distinction between the situation where the corporate partner's activities and the partnership's activities constitute a unitary business and when they do not.

The regulation provides that where the corporate partner's activities and the partnership's activities constitute a unitary business, "the business income of the unitary business attributable to Indiana shall be determined by a three (3) factor formula consisting of property, payroll, and sales of the corporate partner and its share of the partnership's factors[27]...." IND. ADMIN. CODE tit. 45, r. 3.1–1–153(b). Where the corporate partner's activities and those of the partnership do not constitute a unitary business, then the amount of the corporate partner's share of the income from the partnership

---

25. Whether income is business income or non-business income is determined from the point of view of the taxpayer, which is, in this case, the affiliated group.

26. This follows from the fact that section 6–3–2–2 uses the taxpayer's property, payroll, and sales factors for apportioning income. In this case, the affiliated group is the taxpayer.

27. This cures the problem that arises under section 6–3–2–2 when a corporate partner and a corporate partnership are engaged in a unitary business. Section 6–3–2–2 does not mention the partnership's factors in determining the business income of a corporate partner and only makes reference to the use of the corporate partner's factors in determining Indiana's apportioned share of the income derived from the partnership. The regulation allows the use of the partnership's property, payroll, and sales factors *in*

*conjunction with* the corporate partner's property, payroll, and sales factors to determine Indiana's apportioned share. In situations where a corporate partner and a corporate partnership are engaged in a unitary business, the business income generated by the partnership (which is, of course, business income of the corporate partner) will reflect contributions to that income by *both the partnership and the corporate taxpayer itself.* That is the nature of a unitary business. The regulation recognizes this fact. *See* HELLERSTEIN & HELLERSTEIN, *supra,* ¶ 8.11[3][c] (elimination of non-profitable portions of a unitary business in determining state tax liability "cannot be squared with the premise on which combined reporting is for unitary business is based, namely, that in order to *avoid* distortion of income, the income and apportionment factors of *all the components* of a unitary business must be taken into account.") (second emphasis added).

that is attributed to Indiana is determined as follows:

(1) If the partnership derives business income from sources within and without Indiana, the business income derived from sources within Indiana, the business income derived from sources within Indiana shall be determined by a three (3) factor formula consisting of property, payroll, and sales of the partnership.[28]

(2) If the partnership derives business income from sources entirely within Indiana, or entirely without Indiana, such income shall not be subject to formula apportionment.

*Id.* r. 3.1–1–153(c).

Whether the issue is analyzed with reference to section 6–3–2–2 alone or section 6–3–2–2 in conjunction with the regulation (assuming arguendo that the regulation is applicable to the tax years at issue), the Court must determine whether the members of the affiliated group and the partnerships were engaged in a unitary business or not. Hunt fails to mention this issue in its brief, despite the fact that the regulation (which is quoted in full in Hunt's brief) clearly requires its resolution before determining how the income from the corporate partnerships is to be attributed. Hunt simply quotes subsection (c)(1) of the regulation and asks the Court to blindly follow it. However, subsection (c)(1) only would apply if the corporate

partners and the partnership are not engaged in a unitary business.

In its letter of findings, the Department found that the income from the corporate partnerships constituted business income, which means that the Department found that the corporate partners and the partnerships were engaged in a unitary business. (Schuster Aff'd Ex. 38, at 5). Hunt does not dispute this finding, and the Court will not presume that a dispute exists in the absence of the affirmative representations of the parties. Because Hunt has not designated any evidence that would . call this finding into question, the Court will assume that the Department's conclusion is correct. Moreover, the evidence designated by Hunt actually supports the Department's conclusion. Mr. Schuster's affidavit demonstrates that Hunt played an active [29] role in managing the corporate partnerships. (Schuster Aff'd ¶ 33). This supports the Department's conclusion that the corporate partnership income constituted business income. *See Lee v. Department of Revenue,* No. 3909, 1998 WL 283143, at *2 (Or. Tax Ct. May 14, 1998). The finding that the income from the corporate partnerships constituted business income for the affiliated group means that it was subject to factor apportionment. Therefore, the Department properly included all of that income (and losses) in the apportionable base of the affiliated group.[30]

**28.** This ensures that Indiana is able to tax its fair share of the income generated by a corporate partnership where the corporate partner and the partnership are not engaged in a unitary business and the partnership has business income from within and without Indiana.

**29.** *See Container Corp.,* 463 U.S. at 166, 103 S.Ct. at 2940 (requiring more than a passive investment to support determination that investor and investee's activities are sufficiently related so as to constitute a unitary business).

**30.** The parties do not advise the Court as to whether a prorated share of the partnerships' property, payroll, and sales factors were considered in apportioning the affiliated group's income. (However, in its audit summary, the Department states that the partnerships' factors were considered). In fairness, a prorated share of the partnerships' factors should have because the partnerships were part of a unitary business, and those factors played a role in generating the

income that Indiana seeks to tax. Consequently, it would have been improper for Indiana to ignore those factors if it had been asked to consider them. *See Homart Devel. Co. v. Norberg,* 529 A.2d 115 (R.I.1987). However, there is no basis for the Court to order the Department to consider them now if they have not been considered already. First of all, it would be improper to retroactively apply the mandatory rule found in IND. ADMIN. CODE tit. 45, r. 3.1–1–153 to the tax years at issue. The regulation was adopted in 1993, and Hunt has not presented the Court with any evidence that it was intended to apply retroactively. More important, however, is the fact that under subsections 6–3–2–2(*l*) and 6–3–2–2(q), Hunt could have petitioned the Department to consider the partnerships' property, payroll, and sales factors in order to arrive at a fair apportionment. It chose not to do so. Therefore, it cannot complain now that the corporate partnerships' factors should have been considered in determining the affiliated group's Indiana adjusted gross income.

Hunt's alternative argument does not alter this result. In this case, the affiliated group received income from investments in the corporate partnerships. This investment income is adjusted gross income. The question is whether this income is subject to Indiana's adjusted gross income tax. Under Hunt's reading of subsection 6–3–2–1(b), the answer is in the negative because the partnership income that Hunt seeks to exclude from the calculation of the consolidated group's adjusted gross income tax was not, in Hunt's view, Indiana sourced income.

By reading section 6–3–2–1(b), which only allows Indiana to tax adjusted gross income derived from Indiana sources, without reference to section 6–3–2–2, Hunt misses the mark. As explained above, where a corporation has adjusted gross income derived from sources within and without Indiana, a corporation's adjusted gross income derived from Indiana sources is deemed to be business income apportioned to Indiana under the three-factor apportionment formula plus the non-business income allocated to Indiana under the allocation rules.

Under the three-factor apportionment formula, where a corporation has income from sources within and without Indiana, the portion of that income attributed to Indiana is calculated by taking into consideration the corporation's business income from within

*and without* Indiana. In other words, all of a corporation's business income is included in the calculation. Therefore, the relevant inquiry is not the source [31] of the income from the corporate partnerships, but rather whether that income is part of the apportionment base. Where income is subject to apportionment, it does not matter that the income sought to be included in the apportionment base is not or cannot be attributed specifically to the taxing State.

What Hunt is seeking to do is take certain income out of the apportionable base, i.e., reduce the total amount of income subject to Indiana's apportioned share. Hunt may only do so if the income from the corporate partnership is non-business income, thereby making it not subject to apportionment.[32] What Hunt seeks to do is contrary to the operation of section 6–3–2–2. Under section 6–3–2–2, a taxpayer's Indiana sourced adjusted gross income is determined by an apportionment formula, if the taxpayer's adjusted gross income includes income derived from sources both within and without Indiana. Therefore, engaging in a transactional analysis, as Hunt asks this Court to do, is erroneous.[33]

■ Hunt also contends that because in tax years before those in issue the Department had allowed Hunt to exclude income from corporate partnerships from the affiliat-

---

31. The whole purpose of allowing states to apportion income is to relieve them from the burden of determining the source of particular items of income. *See Allied–Signal*, 504 U.S. at 778, 112 S.Ct. at 2258. Of course, it might be argued that a taxpayer should be allowed to remove certain items of business income from the apportionable base where the source of the income made be readily determined. From a theoretical standpoint, this may be true. However, as a practical matter, this argument will almost never carry the day. The income of a unitary business is generated not in discrete parts by isolatable transactions. Rather, the income is generated by the business as a whole. Therefore, separate accounting, as far as it purports to identify the source of income and exclude all other sources for that income, does not comport with economic reality.

For this reason, the Supreme Court has held that the Constitution does not require the states to engage in separate accounting in order to determine the amount of unitary business income that they may tax. *See Mobil Oil*, 445 U.S. at 438, 100 S.Ct. at 1232. Of course, nothing in

the Constitution forbids a state from using separate accounting as a method of determining the sources of income, and the Indiana General Assembly has authorized its use where the allocation and apportionment provisions "do not fairly represent" a taxpayer's Indiana sourced adjusted gross income. *See* IND CODE § 6–3–2–2(*l*).

The fact that separate accounting is an authorized method of determining Indiana's fair share of a corporation's income does not advance Hunt's cause. The use of separate accounting is only authorized in situations where the Department has required its use or the taxpayer has petitioned for its use. Neither of these conditions is present in this case.

32. Hunt, however, does not advance this argument.

33. This transactional analysis may have been required under the version of subsection 6–3–2–2(b) applicable to the 1983 tax year. *See supra* note 14. Under the version of subsection 6–3–2–2(b) applicable to the 1984 and 1985 tax years it was not.

ed group's adjusted gross income where the partnerships themselves conducted no business in Indiana. In support of its contention, Hunt cites IND.CODE § 6–2.1–8–3 (repealed 1997) and IND.CODE § 6–8.1–3–3 for the proposition that the Department cannot change its policy so as to increase Hunt's tax liability in this case. In addition, Hunt argues that the Department is estopped from treating Hunt differently from previous tax years.

The statutory provisions cited by Hunt do not advance Hunt's cause. Section 6–2.1–8–3 prevents a change by the Department in its interpretation of the Indiana gross income tax before that change is adopted in a rule. However, by its terms, section 6–2.1–8–3 only applies to the Indiana gross income tax. Because this case involves Hunt's adjusted gross income tax liability, section 6–2.1–8–3 simply does not apply to this case. *See CNB Bancshares, Inc. v. Department of State Revenue*, 706 N.E.2d 616, 619 (Ind. Tax Ct.1999) (citing *Joyce Sportswear Co. v. State Bd. of Tax Comm'rs*, 684 N.E.2d 1189, 1192 (Ind. Tax Ct.1997), *appeal dismissed*).

■ In 1987, the Indiana General Assembly amended section 6–8.1–3–3 to prevent a change in the Department's interpretation of a listed tax [34] before that change is adopted in a rule if that change would increase a taxpayer's liability for a listed tax. *See Act of Apr. 27, 1987, No. 105, § 1, 1987 Ind. Acts 1613, 1613. However, prior to that amendment and during the tax years at issue, section 6–8.1–3–3 contained no such protection for taxpayers.[35] *See IND.CODE § 6–8.1–3–3 (1982) (codified in present form at *id.* § 6–8.1–3–3 (1998)). As a result, Hunt's reliance on section 6–8.1–3–3 is misplaced.

■ Hunt's estoppel argument is also without merit. As for 1983, the Court has already stated that how the corporate partnership income was to be treated, i.e., similar to its alleged prior treatment by the Department. As for 1984 and 1985, the law had changed with respect to the taxation of cor-

porate partnerships and with respect to when factor apportionment was to be used. Therefore, even if the Department had created the possibility of estoppel by its prior treatment of the corporate partnership income, it was certainly able to apply new law to this situation. Therefore, Hunt's estoppel argument must fail.

## B. The Interest Income

■ One of Hunt's wholly-owned subsidiaries, Huber, Hunt & Nichols, Inc., (HHN) sold some real estate in Arizona under an installment contract. This transaction gave HHN capital gain, as well as interest income. In its letter of findings, the Department first concluded that the income generated by this transaction constituted non-business income.[36] (Schuster Aff'd Ex. 38 at 8). (As described above, non-business income is not subject to apportionment; instead, it is allocated to a particular state.). After the Department arrived at this conclusion, the Department determined that the capital gain was not allocable to Indiana because the real estate was located in Arizona. *See IND.CODE § 6–3–2–2(i)(1); § 6–3–2–2(a) (1982). However, the Department determined that the interest income was allocable to Indiana because HHN had its commercial domicile in Indiana. *See id.* § 6–3–2–2(j) (1982); *cf. Bethlehem Steel*, 639 N.E.2d at 271–72 (intangible income taxed by domiciliary state, not Indiana, under Indiana's gross income tax scheme).

Hunt argues that allocation of the interest income was improper because it "had no connection whatsoever with Indiana." (Pet'r Br. in Supp. Summ. J. at 50). In Hunt's view, because section 6–3–2–1(b) only allows Indiana to tax adjusted gross income derived from sources within Indiana, Indiana may not tax the interest income generated from this installment sale. In addition, Hunt argues that the United States Constitution for-

---

**34.** *See IND.CODE § 6–8.1–1–1 (1998).

**35.** The Court expresses no view concerning how the current version of section 6–8.1–3–3 would have applied to the facts of this case.

**36.** For an informative examination of whether the disposition of real estate constitutes business income or non-business income in the context of a particular factual setting, see *Firstar Corp. v. Commissioner of Revenue*, 575 N.W.2d 835 (Minn.1998).

bids the allocation of the interest income to Indiana.

Hunt is incorrect on both counts. First, Hunt reads section 6–3–2–1(b) without reference to section 6–3–2–2. Section 6–3–2–2(a) defines "adjusted gross income derived from sources within the state of Indiana" to include non-business income allocated to Indiana under allocation rules found in subsections 6–3–2–2(h) through 6–3–2–2(k). Subsection 6–3–2–2(j) allocates non-business interest income to the taxpayer's commercial domicile. Therefore, the Department properly concluded that the interest income was allocable to Indiana.[37]

Hunt's constitutional argument is equally unavailing. The law is quite clear that Indiana may constitutionally allocate non-business interest income (i.e., income from an intangible[38]) of an Indiana commercial domiciliary to Indiana. *See First Bank Stock Corp. v. Minnesota*, 301 U.S. 234, 241, 57 S.Ct. 677, 680, 81 L.Ed. 1061 (1937). There is an exception to this general rule, i.e., where the intangible has acquired a business situs elsewhere. *See id.; Bethlehem Steel Corp.*, 639 N.E.2d at 269, 271. However, Hunt does not argue that this exception is applicable here. Accordingly, the Court holds that the Department properly allocated the interest income from the installment sale to Indiana.

### C. The Capital Gains Income

■ Hunt also contends that the Department inadvertently included capital gains realized by one of Hunt's subsidiaries, Southwest Office Center (SWOC), from a sale of real estate located in Arizona in the adjusted gross income of the affiliated group despite the fact that the Department specifically concluded that the capital gain from the sale was allocable to Arizona and not Indiana.

(Schuster Aff'd Ex. 38 at 8). Hunt directs the Court's attention to six exhibits (Schuster Aff'd Exs. 41–46), which Hunt contends demonstrate that the Department treated SWOC's capital gains from the real estate differently from the capital gains that HHN realized.

The Court agrees with Hunt that there appears to be some difference between the treatment of the capital gains HHN received and the treatment of the capital gains SWOC received. Under the heading, non-business income, HHN's capital gains from its sale of real property are listed, but SWOC's capital gains are not listed. There is no dispute about the proper tax treatment of SWOC's capital gains. If the Department included those capital gains in arriving at the Indiana adjusted gross income of the affiliated group, it erred in doing so. However, in evaluating the exhibits cited by Hunt, the Court cannot verify that SWOC's capital gains were erroneously treated by the Department. This creates an issue of material fact, and, as a result, the Court cannot decide this issue by summary judgment.

### D. The Exclusion of Members of the Affiliated Group from Hunt's Indiana Consolidated Return

■ Under section 6–3–4–14, members of an affiliated group may file a consolidated return. One caveat is that each member must have adjusted gross income derived from sources within Indiana.[39] Hunt complains that the Department incorrectly determined that three members of the affiliated group, Avery Mays Construction Co., Orion Construction Co. and HuntCor, Inc., did not have adjusted gross income from sources within Indiana during the 1983, 1984, or 1985 tax years and that, as a result, the three

---

37. The Court notes that Hunt does not dispute the Department's conclusion that the capital gains and interest income constituted non-business income. Consequently, the Court assumes that the Department's findings on these issues are correct. In evaluating motions for summary judgment, the Court will not search the record in order to spot issues not raised by the parties.

38. Indiana's current treatment of intangible income is found at Ind.Code § 6–3–2–2(a) (1998) and Ind.Code § 6–3–2–2.2 (1998).

39. The Court notes that this statutory provision could have the effect of unfairly representing an affiliated group's adjusted gross income derived from sources within Indiana. *See* Hellerstein & Hellerstein, *supra*, ¶ 9.15. The remedy for this problem lies with the taxpayer petitioning the Department under subsections 6–3–2–2(*l*) and 6–3–2–2(q) to file a combined return. *See* Ind.Code § 6–3–1–28 (1998) (defining combined return). Hunt has not done so.

member corporations did not have the privilege of filing a consolidated return for those years. Hunt contends that these corporations had Indiana adjusted gross income because they received interest income from commercial paper issued by an Indiana bank. (Schuster Aff'd ¶¶ 49, 82, 84). For at least one of the corporations, Avery Mays Construction Co., the collateral was a working asset in that corporation's business. Therefore, the income from that collateral constitutes business income.[40] *See* IND. ADMIN. CODE tit. 45, r. 3.1–1–29 (1984) (codified in present form at *id.* r. 3.1–1–29 (1996)); *cf. State Department of Revenue v. OSG Bulk Ships*, 961 P.2d 399, 414 (Alaska 1998) (investment income from working capital constitutes business income). The question then arises whether this income constitutes income derived from sources within Indiana so as to allow the corporations to file consolidated returns.

In general, as explained above, when dealing with business income, one does not attempt to determine the source of a particular item of income. Rather, business income is apportioned based on the property, payroll and sales factors of the corporation. *See* IND.CODE § 6–3–2–2(b) (Supp.1985). Therefore, if a corporation has no Indiana sales, payroll or property, then the corporation has no adjusted gross income derived from sources within Indiana, unless, of course, the corporation has non-business income allocable to Indiana. *See id.* § 6–3–2–2(a) (Supp. 1985) ("In the case of business income, only so much of such income as is apportioned to this state under the provision of subsection [6–3–2–2](b) shall be deemed to be derived from sources within the state of Indiana.").

According to Hunt's own exhibits, neither of the three corporations had any Indiana property, payroll, or sales factors during the tax years at issue. (Schuster Aff'd Exs. 58, 78, 79). Therefore, none of three corporations had adjusted gross income derived from sources within Indiana, a statutory prerequisite to filing a consolidated return. *See* IND. CODE § 6–3–4–14(c) (1982). Accordingly, the

Department properly removed these corporations from Hunt's consolidated returns.

Hunt's arguments to the contrary do not alter this result. Hunt contends that under sections 6–8.1–3–3 and section 6–2.1–8–3, the Department was barred from removing the three corporations from the consolidated returns because in previous audits of Hunt's returns, it had previously allowed Hunt's subsidiaries in similar circumstances to file consolidated returns. For the same reasons as previously stated above, Hunt cannot rely on these statutory provisions to bind the Department to its audit positions in previous years.

 Hunt also contends that the Department is estopped from removing the three corporations from Hunt's consolidated returns because of its treatment of Hunt in previous years. As a starting point for its analysis, the Court notes that "[a]s a general rule, equitable estoppel will not be applied against governmental authorities." *Department of Envtl. Management v. Conard*, 614 N.E.2d 916, 921 (Ind.1993); *West Publishing Co. v. Department of State Revenue*, 524 N.E.2d 1329, 1333 (Ind. Tax Ct.1988); *see also St. Mary's Med. Ctr. v. State Bd. of Tax Comm'rs*, 571 N.E.2d 1247 (Ind.1991); *cf. Dickman v. Commissioner*, 465 U.S. 330, 343, 104 S.Ct. 1086, 1094, 79 L.Ed.2d 343 (1984) (detrimental reliance by taxpayer on IRS' prior position did not preclude IRS from asserting different position). The Department as a governmental authority will not be estopped in the absence of clear evidence that its agents made representations upon which Hunt relied to its detriment. *See Conard*, 614 N.E.2d at 921.

 In this case, Hunt has failed to designate evidence from which the Court may find the basis of an estoppel against the Department. As the Department points out in its brief, Hunt must show more than the fact that it filed returns in the same manner as it did before. Rather, Hunt must demonstrate that it acted, or failed to act, to its detriment based on representations of the Department. *See id.* Hunt has not desig-

---

**40.** Hunt admits that the interest income received by Orion Construction Co. and HuntCor, Inc.

constitutes business income. (Schuster Aff'd ¶¶ 82, 84).

**782**

nated any evidence from which the Court could conclude that Hunt or its subsidiaries organized their business affairs to their detriment as a result of previous audits by the Department. *See id.* Therefore, Hunt's estoppel argument must fail. *See id.*

### E. Computational Errors Regarding the Affiliated Group's Apportionment Factors

Hunt's final contention is that the Department erroneously calculated the affiliated group's apportionment factors for the tax years at issue. The Court concludes otherwise. Of the four previous issues discussed by the Court, only one has any bearing on the affiliated group's apportionment factors, namely, whether the Department erroneously excluded three of Hunt's subsidiaries from Hunt's consolidated tax returns. Because

the Court has concluded that the Department correctly excluded the subsidiaries from the consolidated returns, the Court finds that Hunt has not demonstrated any error with respect to the calculation of the affiliated group's apportionment factors.

### CONCLUSION

For the aforementioned reasons, the Court now enters summary judgment in part on behalf of Hunt and summary judgment in part on behalf of the Department.